937 F.2d 617
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis Ray COLLINS, Defendant-Appellant.
 No. 90-6312.
 United States Court of Appeals, Tenth Circuit.
 July 9, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Francis Ray Collins appeals his sentence imposed under the Sentencing Guidelines, contending that the district court illegally added three points to the base offense level, pertaining to obstructing or impeding officers, because Collins' conduct "involved physical contact" as provided in Sec. 2A2.4(b)(1) of the Guidelines. We affirm.
 
 
 2
 Mr. Collins, a federal prisoner, attempted to escape from a United States Marshal's inmate transport plane when it landed in Oklahoma City, Oklahoma. As the airplane touched down, Collins--who had partially freed himself from leg irons and handcuffs--leaped from his seat, ran to an emergency exit, and opened the door. He was caught from behind, restrained, and subdued by deputy marshals after a struggle. This is a fact-intensive case. Collins did not dispute the following important facts outlined in the presentence report:
 
 
 3
 4. As the aircraft touched down, the defendant, Francis Collins, jumped from his seat, opened the emergency exit of the aircraft, and attempted to escape. At the time of the incident, Collins had removed the restraints from his right wrist and left ankle. A Deputy U.S. Marshal, Jerry Thornton, grabbed Collins and attempted to restrain him. A Bureau of Prisons employee assisted the U.S. Marshal.
 
 
 4
 5. As other U.S. Marshals offered assistance in subduing the defendant, inmate Lloyd Sloan jumped from his seat and attempted to exit the aircraft through the open emergency exit. Sloan had managed to free one arm and one leg from the restraints in which he was confined when he boarded the aircraft in Santa Barbara, California. He was stopped in his escape attempt by Bureau of Prisons employee Linda Elkins, who also received assistance from another employee.
 
 
 5
 6. The assistance of three or more employees was required to subdue each inmate. Each inmate struggled until completely overpowered. Reports reflect that an electronic "stun gun" was used several times in attempts to restrain the defendant.
 
 
 6
 9. During the presentence interview, the defendant admitted attempting to escape from the transport plane. He advised that he had concocted the plan to escape after being transported in the aircraft on several occasions. The defendant maintains he ceased struggling when he knew an escape was no longer a possibility. The defendant advises he sustained fractured ribs and a broken foot while being subdued by U.S. Marshal and Bureau of Prisons employees.
 
 
 7
 R. Vol. III, Presentence Report, Par's. 4, 5, 6 and portions of 9 (emphasis added).
 
 
 8
 At the change of plea and sentencing hearing Collins also agreed with the following outline of what the evidence would show if the government put its witnesses on the stand:
 
 
 9
 THE COURT: Does the Government wish to outline the evidence that they would introduce with regard to Count 2 so I can determine whether the Defendant articulates and acknowledges his guilt with regard to that evidence?
 
 
 10
 MS. BLACK: Yes, Your Honor.
 
 
 11
 The government's testimony from the witnesses would have been, had it gone to trial, that on December 16, 1989, that the airlift was landing in Oklahoma City at Will Rogers Airport; that Francis Collins was seated with other inmates there that he was being transported with on the airlift; that somehow he worked his way out of his handcuffs, at least partially, got up, tore the emergency door off the plane; that Jerry Thornton was a deputy U.S. Marshall [sic] who was assigned that day to guard the airlift; that he saw this occurring and he ran up and got a grip on Mr. Collins; that Mr. Collins resisted, opposed, impeded and interfered with Jerry Thornton, in that he tried to break Mr. Thornton's grip and Mr. Thornton tried to subdue him. This was while Mr. Thornton was engaged in his official duties.
 
 
 12
 THE COURT: Mr. Collins, did you do those things the Government has just outlined with regard to the evidence in this case?
 
 
 13
 THE DEFENDANT: On Count 2 [obstructing or impeding], yes, sir.
 
 
 14
 R.Vol. II at 8-9 (emphasis added).
 
 
 15
 Section 2A2.4 of the Sentencing Guideline provides, in pertinent part:
 
 
 16
 Sec. 2A2.4. Obstructing or Impeding Officers
 
 
 17
 (a) Base Offense Level: 6
 
 
 18
 (b) Specific Offense Characteristic
 
 
 19
 (1) If the conduct involved physical contact, or if a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels.
 
 
 20
 Collins argues that the physical contact, referred to in Sec. 2A2.4(b)(1) only refers to situations where contact is part of a defendant's plan of action, or where a defendant initiates the contact. To the extent reasonable minds can differ on the point, he argues that the rule of lenity must resolve the question in his favor.
 
 
 21
 Collins makes these arguments from the premise that he did not initiate any physical contact during the course of his escape attempt. Indeed, the essence of his plan was to avoid contact.
 
 
 22
 The record does not support the premise that Collins quietly accepted seizure. The facts outlined above show that Collins attempted to fight off the officers, that he struggled violently, and that he tried to break Deputy Thornton's grip. In other words, when seized, Collins fought to escape. Even if the Guidelines required initiation of contact by the defendant--a point we need not decide--there was plenty of defendant-initiated physical contact here.
 
 
 23
 The words of the Guidelines are unambiguous: "If the conduct [obstructing or impeding officers] involved physical contact...." Collins pled guilty to obstructing or impeding the marshals. His conduct in doing that act most surely involved physical contact. Thus, the district court did not misapply the Guidelines when it added three points pursuant to Sec. 2A2.4(b)(1).
 
 
 24
 Nor does the rule of lenity require a different result. "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." Gozlon-Peretz v. United States, 111 S.Ct. 840, 849, (quoting Callahan v. United States, 364 U.S. 587, 596 (1961). The same principle applies to interpretation of the Guidelines. As indicated, we find no ambiguity in the words of the provision in question.
 
 
 25
 Finally, the only case cited as direct authority for Collins' argument, United States v. Singleton, 917 F.2d 411 (9th Cir.1990), does not even involve Sec. 2A2.4, let alone support Collins' argument on appeal.
 
 
 26
 For the reasons stated, we AFFIRM the sentence imposed by the district court.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3