UNITED STATES of America, Plaintiff,

v.

Dorothy McKEIVER, Defendant.

No. 96–172–CR–ORL–22.

United States District Court,
M.D. Florida,
Orlando Division.

May 14, 1997.

Joel T. Remland, Darlene M. Geiger, Federal Public Defender's Office, Orlando, FL, for Defendant.

A.B. Phillips, U.S. Atty's Office, Orlando, FL, for U.S.

## MEMORANDUM OF DECISION
## ON SENTENCING

GLAZEBROOK, United States Magistrate Judge.

## I. INTRODUCTION

█ The purpose of this memorandum of decision is to memorialize the Court's rulings on two objections to the Presentence Report ["PSR"] in order to assist the Court and the parties on appeal.[1] At sentencing on April 24, 1997, the Court sustained McKeiver's objection to a proposed three-level enhancement under U.S.S.G. § 2A2.4 (b)(1) because McKeiver's conduct did not involve physical contact. The Court also overruled the government's objection that the PSR should have contained a two-level enhancement under U.S.S.G. § 3C1.1 because the government had not proved a willful obstruction of justice. See PSR (April 14, 1997); Addendum to the PSR (April 14, 1997); and Docket Nos. 64, 65 at 4, 69 at 2–3, 66.

Dorothy McKeiver is a 52-year old African–American woman who has attended two years of college at Florida A & M University. PSR at 7. For the last thirty years, she has worked at Bell South Telecommunications in Jacksonville as a coin telephone collector. She earns approximately $48,000 per year gross income (net $32,640 per annum, or $2,720 per month). PSR at 7. For thirty-two years, she has been married to Spencer McKeiver, a dining room supervisor at Ponte Vedra Club who earns approximately $39,400 per year gross income (net $24,000 per annum, or $2,000 per month). PSR at 6, 8. The McKeivers have a net worth of minus $15,909. PSR at 8. McKeiver has no prior criminal history, except for a withheld adjudication some eighteen years ago for shoplifting Christmas cards valued at $3.50. PSR at 5.

On September 26, 1996, McKeiver disembarked the cruise ship "Fantasy" with her daughter, sister, and niece after a cruise to Nassau, Bahamas. The PSR accurately describes the incident that followed. PSR at 1–3. A line custom inspector addressed McKeiver's group as "gals" or "girls," and the women responded that they were "ladies." The line inspector sent them to secondary inspection because they had used one declaration form for four persons with different last names. The secondary inspector, Inspector Eugene Filipowicz asked to check their bags. McKeiver and the other women became verbally abusive, used foul language, and accused Inspector Filipowicz of being an "idiot." The women accused Inspector Filipowicz of harassing the women because of their race. Inspector Filipowicz attempted to calm the group, and warned them not to cross the Customs Inspection counter. The confrontation escalated.

Inspector Filipowicz's supervisor arrived, and spoke with McKeiver and the others. McKeiver continued to loudly accuse Inspector Filipowicz of being an "idiot," and told the supervisor that Inspector Filipowicz should not be working there. McKeiver repeatedly pointed her finger at Inspector Filipowicz. Inspector Filipowicz asked her not to point her finger at him, and McKeiver replied that she would point her finger at whomever she wants. McKeiver became even more agitated, and moved closer to the opening of the Customs Inspection counter. McKeiver then crossed the counter line, and thrust her finger close to Inspector Filipowicz's face as she cursed and berated him. PSR at 2–3. McKeiver's finger came within inches of physical contact with Inspector Filipowicz, but she did not touch him. Inspector Filipowicz understandably and justifiably slapped McKeiver's hand out of his face. This was the only physical contact between Inspector Filipowicz and McKeiver. The supervisor then stepped between the McKeiver and Inspector Filipowicz to prevent further physical contact, and Inspector Filipowicz left. PSR at 3.

McKeiver had clearly assaulted, impeded, intimidated, and interfered with a United States Customs Officer while he was engaged in official duties. On February 5, 1997, a twelve-person jury convicted Dorothy McKeiver of simple assault upon a federal

---

1. The Court of Appeals requires sentencing courts to articulate clear findings regarding sentence enhancements. See United States v. Alpert, 28 F.3d 1104, 1108 (11th Cir.1994) (en banc).

United States Magistrate Judges may enter a sentence for a Class A misdemeanor in a case in which the parties have consented. 28 U.S.C. § 636(a)(5); M.D. Fla. Local Rule 6.01(a).

officer in violation of 18 U.S.C. § 111 after a three day trial. Docket No. 53; *see also,* Docket Nos. 50, 52.

## II. THE PHYSICAL CONTACT ENHANCEMENT

First, it is a misdemeanor to forcibly assault, resist, oppose, impede, intimidate, or interfere with any United States Customs Officer while he is engaged in official duties, where the violation constitutes only a simple assault. 18 U.S.C. § 111(a). The maximum statutory sentence for the misdemeanor is one year imprisonment, a $100,000 fine, or both. 18 U.S.C. § 111, § 3571(b)(5). Second, where the United States charges that a violation of § 111 constitutes anything more than simple assault, the charge is a felony charge that carries a maximum statutory sentence of three years imprisonment, a $250,000 fine, or both. Third, Congress has provided for an enhanced maximum statutory sentence often ten years imprisonment, a $250,000 fine, or both when a person inflicts bodily injury while violating § 111. 18 U.S.C. § 111(b), § 3571(b)(3).

Of course, the United States may not charge a felony by information absent waiver, and a United States Magistrate Judge may not impose sentence in a felony case. *See* Fed.R.Cr.P. 7, 58; 28 U.S.C. § 636(a)(5). The United States and McKeiver agree that the *information charges McKeiver with acts that constitute no more than misdemeanor simple assault. See* Docket Nos. 1, 17, 34.

■ The Court scores misdemeanor simple assault violations under U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers).[2] Section 2A2.4 begins at Base Offense Level 6, and then adds the following Specific Offense Characteristic: "If **the conduct involved physical contact,** or if a dangerous weapon (including a firearm) was possessed and its

use was threatened, increase by 3 levels." U.S.S.G. § 2A2.4(b)(1) (emphasis supplied). No statute, sentencing guideline, or application note to § 2A2.4 further directly defines what the United States Sentencing Commission means by "the conduct involved physical contact."

At sentencing, the government argued that § 2A2.4 (b)(1) has only one possible meaning in this context, and that § 2A2.4 (b)(1) clearly and unambiguously requires a three-level enhancement. Specifically, the government argued that McKeiver's violation and conduct "involved physical contact" because her assault on Inspector Filipowicz caused Filipowicz to slap her hand out of the way. The Court disagrees.

In determining whether "conduct involved physical contact," the Court must first decide *whose* conduct will result in the enhancement for obstructing or impeding an officer: the defendant's conduct or the victim's conduct.[3] The government's argument proves too much. The Court need look no farther than the text of U.S.S.G. § 2A2.4(b)(1) to determine *whose* conduct results in an enhancement. Section 2A2.4(b)(1) calls for a three-level enhancement not only "if the conduct involved physical contact," but also "if a dangerous weapon (including a firearm) was possessed and its use was threatened." *See* U.S.S.G. § 2A2.4(b)(1). The logical extent of the government's reliance on victim-initiated contact would be that the § 2A2.4 (b)(1) enhancement also applies "if a dangerous weapon (including a firearm) was possessed and its use was threatened" **by the victim or officer.** Just as it is illogical to enhance a defendant's sentence because the federal officer under assault possessed and threatened to use a firearm, it is also illogical to enhance a defendant's sentence based on victim-initiated physical contact.

---

2. Felony aggravated assault conduct, however, is scored under U.S.S.G. § 2A2.2. *See* U.S.S.G. § 2A2.4(c). The Court enhances the base level by two levels if the victim sustained "bodily injury," and by four levels if the victim sustained "serious bodily injury." U.S.S.G. § 2A2.2(b)(3). The United States Sentencing Commission defines "bodily injury" as any significant injury such as an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought. *See* Application Note 2 to

U.S.S.G. § 2A2.2; Application Note 1(b) to U.S.S.G. § 1B1.1. The enhancements for bodily injury do not apply to misdemeanor simple assaults scored under U.S.S.G. § 2A2.4.

3. The three-level enhancement for conduct involving physical contact is significant. It amounts to a fifty percent increase in a Base Offense Level six.

When the Court also considers the larger text of the United States Sentencing Guidelines, it becomes even more clear that § 2A2.4 (b)(1) looks only to the conduct of the defendant. Section 2A2.4 is part of Chapter Two of the United States Sentencing Guidelines which pertains to "Offense Conduct," a well defined term. "Offense" means *the defendant's* offense of conviction and all of *the defendant's* relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context. U.S.S.G. § 1B1.1 (1). "Relevant Conduct" means:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. § 1B1.3 (a)(1). "Offense conduct" and "relevant conduct" both focus on the conduct of *the defendant* and the defendant's co-conspirators, not on the conduct of the victim. Similarly, the sentencing court will look to the conduct of the defendant, not the conduct of the victim, in determining whether "the conduct involved physical contact" within the meaning of U.S.S.G. § 2A2.4 (b)(1).

The purpose underlying the sentencing enhancement is instructive. Section 2A2.4 (b)(1) focuses on the nature of the defendant's conduct that comprises the offense of resisting or obstructing, and furthers § 111's purpose of protecting the safety of federal officers. *United States v. Beckner*, 983 F.2d 1380, 1387–88 (6th Cir.1993) (dissent). The enhancement in § 2A2.4 (b)(1):

takes into account not only the threat to the safety of the officers which may be posed by physical contact or the use of a dangerous weapon, but also the added impediment to the execution of official duties which may be posed by physical contact or the threatened use of a dangerous weapon.... *This characteristic focuses on and is limited to the conduct of the defendant which constitutes the resisting offense, that is conduct directed toward the officers who are being impeded or resisted,* and does not take into account defendant's acts against persons who are not officers.

983 F.2d at 1388 (emphasis supplied).

The three-level enhancement in § 2A2.4 (b)(1) clearly applies in the context of defendant-initiated physical contact. *See United States v. Wollenzien,* 972 F.2d 890, 891 (8th Cir.1992) (enhancement applied when defendant struck a severe blow to an IRS agent's neck from behind); *United States v. Williams,* 23 F.3d 404, 1994 WL 199743 (4th Cir.1994) (unpublished opinion) (defendant impeded corrections officers by resisting and scuffling with the officers when they attempted to restrain him, and when they attempted to forcibly release a woman whom the defendant had grabbed and held).

The United States Court of Appeals for the Tenth Circuit expressly chose not to decide whether victim-initiated physical contact can support a § 2A2.4 (b)(1) enhancement. *See United States v. Collins,* 937 F.2d 617, 1991 WL 125158 (10th Cir.1991) (unpublished opinion). In *Collins,* the defendant tried to escape from the emergency exit of an inmate transport plane after landing. Deputy U.S. Marshal Thornton properly grabbed and restrained the defendant using a stun gun. The Court noted that "[e]ven if the Guideline required initiation of contact by the defendant—a point we need not decide—there was plenty of defendant-initiated physical contact here." 1991 WL 125158 at 2. Indeed, the defendant in *Collins* attempted to fight off Deputy Thornton, struggled violently, and tried to break Deputy Thornton's grip. The defendant did not quietly accept seizure. 1991 WL 125158 at 2.

The United States Court of Appeals for the Ninth Circuit also expressly "ducked" the issue of whether victim-initiated physical contact can support a § 2A2.4(b)(1) enhancement. *See United States v. Hill,* 996 F.2d 1228, 1993 WL 230163 (9th Cir.1993) (unpublished opinion). In *Hill,* the defendant at-

tempted to hide valium tablets in his mouth during a search of his prison cell. Corrections Officer Earl properly initiated physical contact with the defendant by grabbing the defendant's arms and forcing them behind his back. The defendant did not become physically aggressive until after other officers arrived, and nothing in the record indicated that Officer Earl was a victim of the later resistance. 1993 WL 230163 at 2–3. Although the only physical contact between the defendant and Officer Earl was contact initiated by the officer, the district court held that the physical contact warranted an enhancement under § 2A2.4(b)(1). 1993 WL 230163 at 2–3.

The court of appeals affirmed, but on very different grounds. The court of appeals noted that § 2A2.4(b)(1) requires consideration of the *defendant's* conduct. The court of appeals chose not to reach the issue of whether the victim-initiated physical contact between Officer Earl and the defendant warranted an enhancement. Relying on authority that permits affirmance of a correct decision that is based upon a wrong ground or a wrong reason, the court of appeals affirmed because the defendant had initiated physical contact against a different corrections officer. 1993 WL 230163 at 3.

■ In conclusion, a sentencing court may enhance a defendant's sentence by applying U.S.S.G. § 2A2.4 (b)(1) based on defendant-initiated physical contact, but not based on victim-initiated physical contact.[4] This is true because the term "conduct" in § 2A2.4(b)(1) requires the sentencing court to focus on the defendant's conduct. Even if the government has shown that § 2A2.4(b)(1) is ambiguous in the context of victim-initiated physical contact, the sentencing court still will not apply the enhancement. Where a criminal statute is ambiguous, the Court must resolve any ambiguities in favor of the defendant. *Ratzlaf v. United States*, 510

4. Similarly, the enhancement applies to defendant-initiated possession of a dangerous weapon, but not to possession and threatened use of a dangerous weapon by the victim or officer.

5. On April 24, 1997, at the sentencing hearing, the United States asked the Court to sentence McKeiver to a *term of imprisonment of six months* and a $5,000 fine. Docket No. 64. The

U.S. 135, 148, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994) (the principle of lenity); *accord Hughey v. United States*, 495 U.S. 411, 422, 110 S.Ct. 1979, 1985–86, 109 L.Ed.2d 408 (1990). A criminal sentencing guideline adopted by the United States Sentencing Commission requires no less clarity than a criminal statute enacted by Congress. McKeiver's objection to the three-level enhancement in U.S.S.G. § 2A2.4(b)(1) is therefore sustained, and the Court has not applied the enhancement in sentencing.[5]

## III. THE OBSTRUCTION OF JUSTICE ENHANCEMENT

■ Before sentencing, the United States objected to the absence in the PSR of a two-level upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice. The government alleged that McKeiver had filed conflicting financial affidavits with the Court which the Court used to determine her eligibility for appointment of a Federal Public Defender. Addendum to PSR at 1. The United States Probation Officer expressed the opinion that the adjustment was not appropriate because:

> The Court ordered the appointment of the federal public defender on January 29, 1997 based on the defendant's testimony and a financial affidavit submitted on December 5, 1996. While the defendant's previously submitted financial affidavit differs from a personal financial statement submitted to the probation officer on April 8, 1997, it is unclear that there was any attempt by the defendant to mislead the Court regarding her financial affairs.

Addendum to PSR at 1. Evaluating McKeiver's statements in a light most favorable to the defendant, the Court agrees with the United States Probation Officer.

■ Section § 3C1.1 provides that "[i]f the defendant willfully obstructed or impeded, or

Court sentenced McKeiver to a term of probation of two years, a $5,000 fine, and a $25 special assessment. Docket No. 64, 65. As a special condition, McKeiver must participate in counseling or treatment for anger management. Docket Nos. 64, 65. The parties preserved their objections after sentencing. Docket No. 64.

attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The upward adjustment applies to committing perjury, providing materially false information to a magistrate judge, and providing materially false information to a probation officer in respect to a PSR.[6] Application Note 3 to U.S.S.G. § 3C1.1. "Material" information means information that, if believed, would tend to influence or affect the issue under determination. Application Note 5 to U.S.S.G. § 3C1.1. It is beyond dispute that a defendant's statement to a magistrate judge about her assets may be material within the meaning of Application Note 5 to U.S.S.G. § 3C1.1 when they lead to the appointment of counsel. *United States v. Ruff*, 79 F.3d 123, 126 (11th Cir.) (defendant told magistrate judge that he had no bank accounts or safe deposit boxes when he in fact co-leased three boxes containing over $37,000), *cert. denied,* —— U.S. ——, 117 S.Ct. 191, 136 L.Ed.2d 129 (1996).

■ In applying § 3C1.1 in respect to false testimony or statements by a defendant, however, the United States Sentencing Guidelines require the sentencing court to evaluate such statements in a light most favorable to the defendant. Application Note 1 to U.S.S.G. § 3C1.1; *United States v. Salemi,* 26 F.3d 1084,1088 (11th Cir.1994). Sentencing courts are bound by the commentaries that interpret and explain the guidelines. *United States v. Alpert,* 28 F.3d 1104, 1107 (11th Cir.1994), citing *Stinson v. United States,* 508 U.S. 36, 37–39, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

At initial appearance and arraignment on November 27, 1996, McKeiver requested appointment of counsel. At the initial appearance, the Court returned McKeiver's financial affidavit to her to review for accuracy, and provisionally appointed the Office of the Federal Public Defender to represent McKeiver "in connection with filing an amended financial affidavit on or before December 9, 1996." Docket No. 5, 7. The Court noticed arraignment for December 9, 1996. Docket No. 9. Noting that the Office of the Federal Public Defender had not yet filed a complete financial affidavit, the Court entered a provisional order on December 6, 1996 again appointing the Office of the Federal Public Defender to assist McKeiver in completing her financial affidavit within five days. Docket No. 11.

On December 9, 1996, Assistant Federal Public Defender Darlene M. Geiger filed a Notice of Filing Copy of Amended Financial Affidavit which attached a photocopy of McKeiver's signed affidavit, and stated that the original would be filed soon. Docket No. 13. McKeiver failed to appear at arraignment on December 9, and the Court re-set arraignment for December 12, 1996. Docket No. 14. On December 12, Assistant Federal Public Defender Geiger filed the original Amended Financial Affidavit as ordered. Docket No. 16.

The financial affidavit form does not specify whether it requests gross or net earnings figures. In her financial affidavit dated December 5, 1996, McKeiver certified that she earned $2,500 per month at Bell South, and that her spouse earned $800 per month—a total of $3,300 per month. Docket No. 16. McKeiver also certified that her monthly debt totaled $3,748. Docket No. 16. According to her financial affidavit, McKeiver's monthly cash flow was a negative $448 per month, and her overall debt totaled $37,319. The Court then formally appointed the Office of the Public Defender. Docket No. 39. Two Assistant Federal Public Defenders appeared and represented McKeiver before and during trial. Docket No. 43.

At the sentencing hearing, the government introduced no evidence that McKeiver willfully obstructed or impeded the administration of justice by committing perjury, by providing materially false information to a magis-

---

**6.** Perjury is a five-year felony. *See* 18 U.S.C. § 1621. Absent a separate count of conviction, providing incomplete or misleading information not amounting to a material falsehood in respect to a presentence investigation does not result in an adjustment for obstruction. The Court is unaware of any perjury charge against McKeiver, but there has been no felony conviction. A defendant's refusal to provide information to a probation officer is not a basis for applying the obstruction adjustment. Application Note 1 to U.S.S.G. § 3C1.1.

trate judge, or by providing materially false information to a probation officer in respect to a PSR. Indeed, the record contains only two documents that relate to McKeiver's available income: the Amended Financial Affidavit filed December 12, 1996 [Docket No. 16] and the PSR [not filed].[7]

The $2,500 per month that McKeiver lists on her financial affidavit for her own income is not significantly different from defendant's actual net income of $2,720 per month in the PSR. Docket No. 16; PSR at 8. The $800 per month that McKeiver lists on her affidavit for her spouse's income, however, is significantly lower than her spouse's actual net income of $2,000 per month in the PSR. Docket No. 16; PSR at 8. Nevertheless, evaluating McKeiver's statement in a light most favorable to her, the government has not proved that McKeiver willfully attempted to mislead the Court regarding her finances.[8]

## IV. CONCLUSION

McKeiver's objection to the proposed three-level enhancement under U.S.S.G. § 2A2.4(b)(1) is SUSTAINED because *McKeiver's conduct* did not involve physical contact with Inspector Filipowicz. The United States' objection that the PSR should have contained a two-level enhancement under U.S.S.G. § 3C1.1 is OVERRULED because the government has not proved a willful obstruction of justice.

On May 5, 1997, the United States appealed McKeiver's sentence to the United States District Court pursuant to 18 U.S.C. §§ 3402, 3742(g) and Fed.R.Cr.P. 58(g)(2)(B).[9] Docket No. 69. Because the United States did not have the benefit of this written opinion as

of May 5, 1997 when it filed its appeal, the United States may file and serve an amended brief on appeal—or shall file and serve a notice that it does not intend to file an amended brief—on or before May 23, 1997. McKeiver shall file and serve her response the government's brief on appeal within eleven days of service of the government's amended brief or notice.

---

7. The government did not introduce in evidence any personal financial statement which McKeiver may have submitted to the probation officer on April 8, 1997, or any financial statement which McKeiver may have revised on the morning of sentencing. *See* Addendum to PSR at 1; Docket No. 69 at 2.

8. At sentencing, the Court informed the United States that the denial of the § 3C1.1 adjustment was without prejudice to the government's right to move for a determination of the propriety of continuing representation by the Office of the Federal Public Defender. The United States has sought no such determination.

9. Although the Federal Courts Improvement Act of 1996 eliminated the alternative appeal route to the district judge in civil cases decided by a magistrate judge on consent, the Act did not affect the appeal route in misdemeanor consent cases. *See* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, 110 Stat. 3847, 3850—51 (codified as amended at 28 U.S.C. § 636(d) (1996)); S.Rep. No. 104–366 at 31 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4202, 4211.