**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darlene Marie BECKNER,
Defendant–Appellant.**

No. 92–5253.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 5, 1992.

Decided Jan. 20, 1993.

J. Edgar Schmutzer, Asst. U.S. Atty. (argued and briefed), Jerry G. Cunningham, U.S. Atty., Knoxville, TN, for plaintiff-appellee.

John E. Eldridge (argued and briefed), Ray, Farmer, Eldridge & Hickman, Knoxville, TN, for defendant-appellant.

Before: KENNEDY and MARTIN, Circuit Judges; and GRAHAM, District Judge.*

KENNEDY, Circuit Judge.

Defendant Darlene Marie Beckner appeals her sentence under the Sentencing Guidelines. She plead guilty to four counts of mail theft under 18 U.S.C. § 1708, one count of possession of keys to steal mail under 18 U.S.C. § 1704, and one count of illegal possession of agricultural coupons under 7 U.S.C. § 2024(b). She was also convicted by a jury of two counts of resisting arrest under 18 U.S.C. § 111. Defendant argues that the District Court erred in not grouping all of the counts of her plea and conviction under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") Section 3D1.2. Because we find the District Court to have erred in not grouping one of defendant's resisting arrest counts with the counts to which she plead guilty, we VACATE the sentence and REMAND for resentencing consistent with this opinion.

I.

During the month of August 1991, United States Postal Inspectors Russ Fallis and Raymond Pearce investigated mail theft from the Talbott, Tennessee post office, placing a hidden video camera in the post office lobby. This camera recorded four

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

occasions in which a woman wearing a black and red uniform entered the post office lobby and removed mail from mailboxes from which theft had previously occurred. Further investigation revealed the black and red uniform to be that of the Mayflower Restaurant, and when the manager of the Mayflower viewed the videotapes, he identified the woman as defendant, who was at the time a Mayflower waitress. Fallis and Pearce then had dinner at the Mayflower in order to positively identify defendant as the woman who had taken mail. After doing so, the two postal inspectors decided to stake out the post office lobby. Pearce hid behind the wall of mailboxes where the video camera had been placed, watching the camera monitor. Fallis remained in his car, driving back and forth in front of the post office.

At 11:06 p.m., defendant entered the post office lobby. After observing defendant's activities in the lobby, Pearce entered the lobby with his gun drawn, in order to arrest defendant. Pearce claims he was wearing his postal inspector's raid jacket and badge, although defendant claims she saw neither. Pearce identified himself as a police officer and informed defendant she was under arrest. Defendant attempted to leave the post office lobby, Pearce grabbed her arm, and a struggle ensued. Eventually Pearce subdued defendant, forcing her to her knees. When he used his radio to call Fallis, however, defendant ran out of the post office lobby and to her car. As defendant attempted to start the car, Pearce reached into the car and tried to take the keys away. Defendant successfully started the car and backed it up, causing part of the car to strike Pearce, leaving a large bruise on his arm. At this point, Fallis arrived and attempted to block the post office exit with his car, which was clearly identified as a law enforcement vehicle by two flashing blue lights on the grill, a rotating beacon on the dashboard, and a high intensity strobe on the rear deck. Defendant narrowly avoided Fallis' car and exited the post office. According to Fallis, defendant accelerated toward and nearly collided with his car. Upon exiting the post office, defendant drove to her

home through two subdivisions. During at least part of this drive, she did not have her headlights on. According to Fallis, who was pursuing her, defendant drove recklessly, crossing a grassy median strip in order to shorten a turn and at one point ignoring a stop sign. Defendant admits having exceeded the speed limit. A witness, Leroy Gass, testified that he feared for the safety of several children, including his own, who were playing near the road. While Fallis did not receive any response when he attempted to contact the Hamblen County Sheriff's Department, off-duty Chief Deputy Robert Hill witnessed the chase and followed in his own car, as did Leroy Gass.

When defendant reached her house, she left her vehicle and attempted to run inside. After identifying himself again as a law enforcement officer and stating that defendant was under arrest, Fallis exited his car with his shotgun. In gaining control over defendant, another struggle ensued, at one point during which Fallis clumsily struck defendant on the head with his shotgun. When defendant's husband approached, Fallis pointed the shotgun at him, identified himself as a law enforcement officer, and ordered Mr. Beckner to lie on the ground, which he did. Mr. Beckner then asked if he could go inside to take care of the couple's children, and Fallis allowed him to. When Chief Deputy Hill and Leroy Gass arrived, they placed defendant in Hill's unmarked patrol car.

Defendant pled guilty to the mail theft charges on November 5, 1991. The next day, a jury found defendant guilty of two counts of resisting arrest. On February 11, 1992, defendant was sentenced to twenty-four months of incarceration and three years of supervised release. She was ordered to pay restitution of approximately $5,000 and a special assessment of $400.

## II.

██ To arrive at the mail theft offense level of 12, the District Court grouped all four mail theft counts together, as required by U.S.S.G. § 3D1.2. The initial base offense level of 4 was then found under

U.S.S.G. § 2B1.1(a). Four levels were added for the total loss to defendant's victims of over $5,000, under U.S.S.G. § 2B1.1(b)(1)(E). Two more levels were added for more than minimal planning, under U.S.S.G. § 2B1.1(b)(5). Finally, two levels were added for reckless endangerment of others during flight from a law enforcement officer, under U.S.S.G. § 3C1.2. The District Court did not group the resisting arrest counts—one for resisting arrest by Fallis and one for resisting arrest by Pearce—citing U.S.S.G. § 3D1.2. To arrive at the resisting arrest base offense level of 9 for each count, the District Court used the initial base level of 6 under U.S.S.G. § 2A2.4(a). Three levels were then added for possessing and threatening to use a dangerous weapon, a car, under U.S.S.G. § 2A2.4(b)(1).[1]

The District Court calculated defendant's sentence by assigning one unit to the highest offense level, the 12 arrived at for the mail theft group of closely related counts. Because the resisting arrest counts each had an offense level of 9, which is within four levels of the highest offense level (*i.e.,* the 12 level of the mail theft group), the District Court also assigned one unit for each of them. Under U.S.S.G. § 3D1.4, these three units required an addition of three levels to the highest offense level of 12, and thus defendant's combined adjusted offense level was found to be 15. Because defendant was in Criminal History Category I, this total offense level of 15 translated into a sentencing range of 18 to 24 months. The District Court then gave defendant the maximum sentence under this range.

### III.

▮ In the present case, the central issue in deciding whether offenses should be grouped involves interpreting the Guidelines. Guideline interpretation is a question of law to be reviewed by this Court de novo. *United States v. Edgecomb,* 910 F.2d 1309, 1311 (6th Cir.1990).

### IV.

▮ Defendant contends that the District Court erred by not grouping the two resisting arrest counts with the mail theft counts. The District Court did not group these counts because it found that they fell within the explicit exclusion from grouping under U.S.S.G. § 3D1.2 found in subsection (d). The third paragraph of section 3D1.2(d) states that listed sections are "[s]pecifically excluded from the operation of this subsection." The first item of the list of excluded offenses are "all offenses in Chapter Two, Part A," which obviously includes the section 2A2.4(a) Guideline under which defendant was sentenced for resisting arrest.

Where the District Court erred was in failing to give effect to the final paragraph of section 3D1.2(d), which states that "[e]xclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection." Section 3D1.2(c) provides precisely such a grouping mandate for the circumstances here. The counts involve substantially the same harm and must thus be grouped, according to section 3D1.2(c), "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other *adjustment to,* the guideline applicable to another of the counts." (Emphasis added). Defendant's driving of the car in her futile attempt to escape arrest by Pearce and Fallis forms the basis of the "reckless endangerment during flight" two level enhancement of her mail theft counts, falling within section 3D1.2(c)'s "other adjustment to" language. The very same conduct, defendant's driving of the car in her futile attempt to escape arrest by Pearce and Fallis, is also embodied in de-

---

**1.** Defendant questions whether a car may be considered a deadly weapon. This Court recently faced a similar question and found no difficulty with such a characterization. *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992) ("a car can be a deadly weapon").

As indicated by Application Note 2 to U.S.S.G. § 2A2.4, the definition of "deadly weapon" is found in Application Note 1(d) to U.S.S.G. § 1B1.1. We find nothing in that definition which would exclude a car used as defendant used hers.

fendant's resisting arrest counts. As a result, section 3D1.2(c) applies, and at least one of the resisting arrest counts must be grouped with the counts to which defendant pled guilty as "counts involving substantially the same harm" under section 3D1.2. *Cf. United States v. Lincoln,* 956 F.2d 1465, 1470 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 259, 121 L.Ed.2d 190 (1992) ("if an obstruction [of justice] offense has been used to adjust the sentence for a related offense, then in sentencing for the obstruction offense the court is required to group that offense with the related offense even when the two were separately charged and separately tried and are being separately sentenced").

■ The dissent argues that because defendant's conduct, driving recklessly, is a "specific offense characteristic" of her resisting arrest counts it cannot also be considered as conduct embodied in those counts, and therefore subsection (c) does not require grouping. U.S.S.G. § 3D1.2(c). The underlying assumption of the dissent's argument is that the categories of specific offense characteristic and conduct embodied in a count are mutually exclusive, in other words that once conduct has been identified as a specific offense characteristic under a guideline, it cannot also be conduct embodied in an offense. We find this assumption to be erroneous. First, while subsection (c) refers to the "specific offense characteristic in, or other adjustment to the *guideline*" in reference to the second count being considered for grouping, it refers to the conduct embodied in the first "*count*[ ]." *Id.* (emphasis added). This change in terminology indicates that while subsection (c) requires looking at the adjustment to the guideline for the second count—here, the reckless endangerment enhancement of the theft offense level—it requires looking at the count itself for the first count being considered—here, the resisting arrest count. Thus, the reckless driving is still at the core of the conduct embodied in the resisting arrest count even though it is also undeniably a specific offense characteristic in the obstructing or impeding guideline. Second, the phrase "specific offense characteristic" on its face

describes conduct embodied in an offense. Rather than refer to discrete conduct distinct from the offense, it uses the word "characteristic," which means an integral "feature or quality" of what is being described. The Random House College Dictionary 226 (rev. ed. 1980). Viewed this way, it should be no surprise that determining that conduct is a specific offense characteristic in a particular guideline does not necessarily preclude it from being determined to be conduct embodied in the underlying count. Thus, defendant's reckless driving is conduct embodied in her resisting arrest counts notwithstanding the dissent's correct identification of it as a specific offense characteristic in the guideline used to determine the sentence for the same counts.

In response to the grouping issue, the government counters that the same conduct did not form the basis of the reckless endangerment enhancement to the mail theft counts and the possession of and threat with a deadly weapon enhancement of the resisting arrest counts. Instead of viewing the conduct forming the basis of these enhancements as the defendant's driving of the car in her futile attempt to escape Pearce and Fallis, the government views defendant's driving as three separate incidents. In the government's view, defendant first drove the car in such a way that it was a deadly weapon threatening Pearce. Then she drove the car in such a way that it was a deadly weapon threatening Fallis. Finally, she drove the car in such a way that it recklessly endangered third parties, such as the children for whose safety Leroy Gass feared. Such an interpretation of events is an artificial and unrealistic division of a single uninterrupted course of conduct into separate events. Defendant's use of her car to flee the post office and seek refuge at her home was a single fluid action. We see no reason to carve this conduct up into an action here and an action there for the purpose of adding to defendant's sentence.

Moreover, we cannot know that the jury did not include the driving of the car through the neighborhood in its conviction

on the resisting arrest counts. As the court informed the jury,

Count II of the indictment charges that on or about the 17th day of August 1991 in the Eastern District of Tennessee that Darlene Marie Beckner knowingly did forcibly resist, oppose, impede, intimidate and interfere with Raymond Andrew Pearce, a United States postal inspector, while he was engaged in his official duties. Count III charges that on the same day Darlene Marie Beckner also knowingly and forcibly resisted, opposed, impeded and interfered with another postal inspector, Russell R. Fallis, while he was engaged in his official duties.

Now, these counts charge violations of Title 18 of the United States Code Section 111, a law intended to protect federal officers from forcible resistance or interference with their official duties.

Now, in order for the government to be entitled to a verdict on Counts II and III, it must prove for each of them beyond a reasonable doubt the following elements of the offense.

First, that Darlene Marie Beckner forcibly resisted or opposed or impeded or intimidated or interfered with the United States postal inspector named in the particular count;

Secondly, they must prove that the postal inspector was a federal officer then engaged in the performance of his official duties, and, three, that she did so intentionally.

Now, the term "forcibly" means by use of force. As used here, it means with a deliberate, intentional application of physical force, strength or power, such as a push or a shove, even when the officer is not actually injured. Physical force can be applied by human bodily strength or by the use of some other implement such as a stick, a gun or even a motor vehicle. However, resisting a federal agency by lying to him or by simply refusing to open the door, for example, is not forcible within the meaning of the law involved in Counts II and III.

We do not, however, group the second resisting arrest count. Application Note 5 to U.S.S.G. § 3D1.2(c) states that when there are multiple counts,

each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor[,] ... only the count representing the most serious of those factors is to be grouped with the other count.

Thus, one of the resisting arrest counts must be grouped with the counts to which defendant pled guilty, under section 3D1.2.[2]

## V.

Because we find the District Court to have erred in its interpretation of the Guidelines, by failing to group one of defendant's resisting arrest counts with the counts to which she pled guilty, we VACATE defendant's sentence and REMAND for resentencing consistent with this opinion.

GRAHAM, District Judge, dissenting.

Defendant has raised as error on appeal the district court's failure to group all of the counts of conviction for purposes of sentencing pursuant to § 3D1.2 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). A majority of the panel has agreed that one of the resisting counts must be grouped with the theft counts. For the following reasons, I respectfully dissent.

Defendant pleaded guilty to four counts of stealing mail under 18 U.S.C. § 1708, one count of possession of keys to steal mail under 18 U.S.C. § 1704 and one count of illegal possession of agricultural coupons under 7 U.S.C. § 2024(b). Defendant

---

2. Defendant also contends that the District Court erred in applying the specific offense characteristic under U.S.S.G. § 2A2.4(b)(1) because defendant was neither indicted for nor convicted of assault. This Court, however, has

recently confirmed the breadth of conduct which may be considered in sentencing under the Guidelines. *See United States v. Davern,* 970 F.2d 1490, 1494 (6th Cir.1992) (en banc).

was convicted by a jury of two counts of resisting a federal officer under 18 U.S.C. § 111, each involving a separate officer. The district court combined the six theft-related offenses into one group, and treated each resisting count as a separate group, resulting in a total of three groups. Defendant argues that the two resisting offenses must be grouped with the theft offenses due to the fact that the theft offense level, which was enhanced two points for reckless endangerment pursuant to U.S.S.G. § 3C1.2, was duplicative of the resisting and impeding offense level, which was enhanced with the specific offense characteristic of the possession and threatened use of a dangerous weapon.[1]

The grouping of closely related counts under the Guidelines is governed by § 3D1.2(a) through (d). Section 3D1.2 requires the court to group closely related counts, *i.e.* counts involving substantially the same harm. *United States v. Kleinebreil*, 966 F.2d 945, 954 (5th Cir.1992); *United States v. Barron–Rivera*, 922 F.2d 549, 554 (9th Cir.1991). Each subsection must be considered to determine if the counts satisfy any of the criteria for grouping. *United States v. Wilson*, 920 F.2d 1290, 1293–1294 (6th Cir.1990). In the instant case, subsections (a) and (b) do not apply, because the three groups involved separate victims. Subsection (d) does not apply because the resisting offenses are specifically excluded from the grouping process under that subsection.

Thus, the issue in this case is whether grouping is required under subsection (c), which provides for grouping "[w]hen one

of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). This subsection targets "conduct" embodied in "one of the counts" that is treated as a "specific offense characteristic" in another count. *United States v. Astorri*, 923 F.2d 1052, 1056 (3d Cir.1991). Specific offense characteristics are types of misconduct that typically occur in the course of the offense for which the defendant was convicted and which aggravate the offense. *Barron–Rivera*, 922 F.2d at 554. Offenses may be grouped only if each involved substantially the same harm. *Id.*

The majority has concluded that one of the resisting counts must be grouped with the theft group, although the majority acknowledges that under Application Note 5 to § 3D1.2(c), the second resisting count is not subject to grouping. I would hold that the trial court properly treated these counts as three separate groups.

The analysis under subsection (c) requires comparing "one of the counts" with the specific offense characteristics and adjustments applicable to other counts. Subsection (c) does not expressly require that adjustments to the first count also be compared with the adjustments applicable to other counts. Otherwise, subsection (c) would have been drafted to require grouping when "one of the counts or any adjustment to that count" is treated as a specific offense characteristic of or adjustment to another count. Since the Guidelines are interpreted pursuant to the standard rules

---

**1.** Defendant does not argue that she could not be convicted and sentenced on both resisting counts. As *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) and its progeny indicate, a defendant may be sentenced separately for violations of 18 U.S.C. § 111 involving separate officers so long as the injuries to the officers were not caused by a single act. The authorities on this point indicate that defendant's struggles with Inspector Pearce in the lobby and parking lot of the post office and her near collision, car chase and struggles with Inspector Fallis would be considered separate acts meriting separate treatment. *See e.g., United States v. Rivera Ramos*, 856 F.2d 420 (1st Cir. 1988), *cert. denied*, 493 U.S. 837, 110 S.Ct. 118,

107 L.Ed.2d 79 (1989); *United States v. Wesley*, 798 F.2d 1155 (8th Cir.1986) (separate sentencing where defendant hit one guard, then moments later hit another); *United States v. Hodges*, 436 F.2d 676 (10th Cir.), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971); *United States v. Montanaro*, 362 F.2d 527 (2d Cir.), *cert. denied*, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966) (separate sentences upheld where defendant assaulted more than one person with a car). The gist of defendant's argument is that both resisting offenses must be grouped with the theft offenses, not that the resisting offenses must be grouped with each other.

of statutory construction, courts must follow the clear, unambiguous language of Guidelines provisions. *United States v. Lewis*, 900 F.2d 877, 881 (6th Cir.), *cert. denied*, 498 U.S. 840, 111 S.Ct. 117, 112 L.Ed.2d 86 (1990). Under these principles, it should be assumed that the omission of that language was deliberate. *Cf. Lewis*, 900 F.2d at 881 (exceptions not specifically mentioned are excluded). However, even if it is assumed that subsection (c) requires a comparison of the first count plus adjustments against the second count plus adjustments, the adjustments in this case address distinct concerns, and the application of both would not result in double counting.

The probation officer applied the general theft guideline found in U.S.S.G. § 2B1.1 to the theft count group. The theft group was enhanced with the Chapter Three adjustment of reckless endangerment found in U.S.S.G. § 3C1.2. That provision allows the addition of two points where the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The probation officer applied the guideline for obstructing or impeding officers found in U.S.S.G. § 2A2.4 to the resisting counts. The specific offense characteristic found in U.S.S.G. § 2A2.4(b)(1) provides for a three-point enhancement where defendant's conduct resulted in physical contact or where defendant possessed and threatened the use of a dangerous weapon.

The conduct underlying the theft counts involves different harms than those addressed by the resisting counts. The theft offenses involved the theft of mail, the illegal possession of agricultural coupons and the illegal possession of mail keys. The purpose behind the theft offenses is the protection of property. Factually, these offenses were technically completed before the acts constituting the resisting offenses were commenced.

The purpose behind the offense provided by 18 U.S.C. § 111 is the protection of both federal officers and federal functions. *United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975).

One aim behind § 111 is to prevent interference with federal functions or hindrance to the execution of official duties. *Ladner*, 358 U.S. at 175–176, 79 S.Ct. at 213; *United States v. Jim*, 865 F.2d 211, 214 (9th Cir.), *cert. denied*, 493 U.S. 827, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989). The other concern behind the enactment of § 111 was the safety of federal officers. *Feola*, 420 U.S. at 681, 95 S.Ct. at 1262. Under 2A2.4, the possession and threatened use of a dangerous weapon is a specific offense characteristic which enhances the penalty. The theft guideline under § 2B1.1 and its specific offense characteristics bear no relationship to and are not embodied in the resisting and impeding guideline under § 2A2.4 and its specific offense characteristic.

The specific offense characteristic under § 2A2.4(b)(1) does not necessarily address the same harm or embody the same conduct as the general § 3C1.2 adjustment for reckless endangerment applied to the theft counts. Section 3C1.2 was added to the Guidelines on November 1, 1990, thereby codifying an adjustment for reckless endangerment during flight which some courts had been imposing as an obstruction of justice adjustment under U.S.S.G. § 3C1.1. *See United States v. Bell*, 953 F.2d 6, 8 (1st Cir.1992). However, in *United States v. Christoffel*, 952 F.2d 1086, 1089 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992), where the defendant was sentenced prior to the effective date of § 3C1.2, the court struck down the use of § 3C1.1 to enhance the sentence where the defendant endangered the lives of agents while fleeing in his vehicle. The court stated, *Id.*, that fleeing from arrest in itself is not covered by § 3C1.1, and that "whether a defendant recklessly endangered others while fleeing bears no logical relation to whether that defendant was obstructing the law enforcement officers who were attempting to apprehend him."

I agree with the reasoning in *Christoffel*. The reckless endangerment adjustment addresses conduct where the defendant recklessly creates a substantial risk of death or serious bodily injury to any person, includ-

ing persons who are not law enforcement officers, which happens to occur while defendant is fleeing a law enforcement officer. The focus of the adjustment is on the threat to personal safety to which other persons are exposed during the flight, not the flight or act of resisting arrest itself.

The specific offense characteristic in § 2A2.4(b)(1) applies where defendant's conduct resulted in physical contact or where defendant possessed and threatened the use of a dangerous weapon. This characteristic focuses on the nature of the conduct comprising the offense of resisting and furthers the dual purpose behind § 111. This enhancement takes into account not only the threat to the safety of the officers which may be posed by physical contact or the use of a dangerous weapon, but also the added impediment to the execution of official duties which may be posed by physical contact or the threatened use of a dangerous weapon. Unlike the § 3C1.2 adjustment, this characteristic does not require that the threatened use of a dangerous weapon create a substantial risk of death or serious bodily injury. The characteristic may also be satisfied by conduct involving physical contact, which is not an element of the § 3C1.2 adjustment. This characteristic focuses on and is limited to the conduct of defendant which constitutes the resisting offense, that is, conduct directed toward the officers who are being impeded or resisted, and does not take into account defendant's acts against persons who are not officers.

Thus, the harm addressed by the § 3C1.2 adjustment does not fully embody the harm addressed by the § 2A2.4(b)(1) offense characteristic, and vice versa. Moreover, the application of both those factors in this case was based upon distinct conduct on the part of defendant. The § 3C1.2 adjustment was based upon defendant's high speed flight in her car which endangered not only the agents, but also the persons in defendant's neighborhood who were placed at risk by defendant's erratic driving. The § 2A2.4 characteristic was based upon the

separate conduct of the threatened use of defendant's car as a dangerous weapon against Agents Pearce and Fallis at the post office. While the probation officer did not specifically rely on the physical contact prong, the evidence of defendant's physical struggles with Agent Pearce at the post office and with Agent Fallis at the driveway of defendant's residence would also justify the application of this offense characteristic. The use of both these enhancements does not result in punishing the same conduct twice.

The majority states that since the defendant's conduct constituted a single fluid action, all of the counts should be grouped. However, the fact that conduct underlying different counts occurred during the same act or course of conduct does not necessarily mandate grouping where the defendant's conduct was comprised of several different acts which resulted in separate harms to separate victims. *See, e.g., United States v. Toler*, 901 F.2d 399, 403 (4th Cir.1990). Similarly, the same factor may give rise to two separate departures. *See, United States v. Campbell*, 967 F.2d 20, 24 (2d Cir.1992). Although defendant's conduct occurred over a relatively short period of time, defendant committed several distinct acts which implicated separate harms. If the offenses are grouped, so that in effect only the § 3C1.2 adjustment is applied, the harms which are outside the scope of that adjustment will not be addressed in the sentencing calculations. I would conclude that grouping of these counts is not required.

For the foregoing reasons, I would affirm the sentence imposed by the district court.[2]

<hr />

2. I agree with the majority's decision that defendant's other assignment of error, in which defendant argues that the court erred in applying the three-point enhancement under § 2A2.4(b)(1) since she was not charged in the indictment with assault, is not well taken.