**UNITED STATES OF AMERICA,**
Plaintiff–Appellee,

v.

**Michael John KADUNC & Shane Connors, Defendants–Appellants.**

Nos. 99–3908, 99–3909.

United States Court of Appeals, Sixth Circuit.

Feb. 27, 2001.

Before NELSON and MOORE, Circuit Judges; WILHOIT, District Judge.*

WILHOIT, District Judge.

The defendant-appellant Michael John Kadunc appeals the district court's application of the reckless endangerment enhancement pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3C1.2 in calculating the offense level for his armed bank robbery convictions. He also appeals the district court's assessment of three criminal history points pursuant to U.S.S.G. § 4A1.1(d) and (e). The defendant-appellant Shane Connors appeals the district court's denial of the motion of the United States for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1. For the reasons discussed below, we AFFIRM Kadunc's sentence and we DISMISS Connors' appeal.

## I. Facts

On November 9, 1998, a grand jury issued a nine-count indictment against Michael John Kadunc and Shane Connors. They were both charged with one count of conspiracy to commit armed bank robbery

---

* The Honorable Henry R. Wilhoit, Jr., Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

under 18 U.S.C. § 371 and Kadunc was charged with four counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), three counts of using and carrying a firearm in relation to an armed bank robbery in violation of 18 U.S.C. § 924(c), and one count of assault on a federal officer in violation of 18 U.S.C. § 111(a) and (b). In addition to the conspiracy charge. Connors was charged with one count of armed bank robbery under 18 U.S.C. § 2113(a) and (d).

Kadunc entered into a plea agreement on February 22, 1999, in which he pleaded guilty to the conspiracy count, the armed bank robbery counts, one of the counts of using and carrying a firearm in relation to an armed bank robbery, and the count of assault on a federal officer. At his sentencing hearing on December 27, 1998, he made several objections to the presentence investigation report. One argument relevant to this appeal was that the reckless endangerment enhancement should not have been applied in calculating the base offense level for his armed bank robbery counts because the identical conduct was taken into account in his conviction for assault on a federal officer for sentencing purposes. Kadunc argued that this resulted in impermissible "double counting." The district court rejected this argument because the reckless endangerment enhancement was only applied to the armed bank robbery counts and not the assault count. Had the enhancement been applied to the assault count, it would have constituted double counting, but there was no such problem here, according to the district court.

Kadunc also objected to the assessment of three criminal history points under U.S.S.G. § 4A1.1(d) and (e) for committing the instant offenses (1) while under a state criminal sentence of probation and (2) less than two years after his release from imprisonment on a state sentence. He argued that several of the offenses had been committed prior to imposition of the state sentences of probation and imprisonment and since the term "instant offense" is vague, it should be narrowly construed in his favor to refer only to the offense ultimately used as the basis for the combined adjusted offense level. The district court rejected this argument and assessed these points.

Kadunc was sentenced to sixty months on the conspiracy count, 132 months on the four bank robbery counts, and 120 months on the gun count, all to run concurrently. He was also sentenced to sixty months on the assault count, to run consecutively to the sentence on the other counts.

Connors pleaded guilty to his two counts in the indictment on March 10, 1999. At his sentencing hearing on July 8, 1999, the government filed a motion for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1, recommending a three-level reduction. The district court considered the government's motion but denied it for two reasons: first, because of the disparity that would result between Connors' and Kadunc's sentences; and second, based upon a finding that there were actual victims. Connors was sentenced to sixty months on the conspiracy count and seventy-six months on the bank robbery count, to be served concurrently.

## II. Kadunc's Appeal

### A. Enhancements

Section 3C1.2 of the Sentencing Guidelines provides for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. . . ." Kadunc argues that because he pleaded guilty to the charge of assault on a

federal officer, the application of this enhancement to his base offense level for the armed bank robbery convictions was impermissible in that it took identical conduct into account twice for purposes of sentencing.

In calculating Kadunc's sentence, the multiple counts to which he pleaded guilty were first grouped together pursuant to U.S.S.G. §§ 3D1.1 and 3D1.2. Next, the district court determined the offense level for each group after applying applicable enhancements. *Id.* § 3D1.3. An enhancement for reckless endangerment was applied to each armed bank robbery count group because Kadunc attempted to flee from law enforcement officers by driving his vehicle into an officer's vehicle, engaging in a high speed chase, and colliding head-on with another officer's vehicle. An "official victim" enhancement, which applies if "during the course of the offense or immediate flight therefrom, the defendant . . ., knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury[,]" was applied to the count group including the charge for assault on a federal officer. However, the reckless endangerment enhancement was not applied to this count group. The Court's application of the Sentencing Guidelines resulted in the following groups and enhancements:

| Count Group | Base Offense(s) | Enhancements Relevant to this Appeal | Total Adjusted Offense Level |
|---|---|---|---|
| 1 | Conspiracy and Armed Bank Robbery | 3C1.2 (reckless endangerment) | 29 |
| 2 | Conspiracy and Armed Bank Robbery | 3C1.2 (reckless endangerment) | 28 |
| 3 | Armed Bank Robbery | 3C1.2 (reckless endangerment) | 28 |
| 4 | Armed Bank Robbery | 3C1.2 (reckless endangerment) | 25 |
| 5 | Assault on Federal Officer | 3A1.2(b) (official victim) | 25 |

As noted, the district court did not apply the reckless endangerment enhancement to the count group which consisted of the charge for assault on a federal officer, Count Group 5. "Units" were then assigned to each count group in accordance with U.S.S.G. § 3D1.4. In this case, each count group received one unit. At this point in the calculation, the district court used the offense level applicable to the count group with the highest offense level, Count Group 1 in this case, and increased the offense level by the applicable number of units for the other count groups for a combined adjusted offense level of thirty-three. The district court concluded that these enhancements were proper and that Kadunc's conduct in the assault offense was not counted twice because the reckless endangerment enhancement was not applied to the assault charge, but only to the robbery counts.

Kadunc argued that application of the reckless endangerment enhancement to the armed robbery count groups constituted impermissible "double counting" because the identical conduct formed the basis for the charge of assault on a federal officer. He relied on an application note to § 3C1.2, which states that the reckless endangerment enhancement should not be applied "where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct." U.S. Sentencing Guidelines Manual § 3C1.2 cmt. n. 1. Because the district court applied a three-level "official victim" enhancement under § 3A1.2(b) in computing the offense level for Kadunc's count group for assault on a federal officer, he contends that the district court could not then apply the

lower two-level enhancement for reckless endangerment in computing the offense level for his count groups for armed bank robbery.

Kadunc also relied on *United States v. Hayes,* 135 F.3d 435 (6th Cir.1998), which held that a district court could not apply the two-level reckless endangerment enhancement when it had already applied the three-level official victim enhancement based upon the same conduct in computing the offense level for the same charge. In a supplemental filing to this court, Kadunc argued that *United States v. Farrow,* 198 F.3d 179 (6th Cir.1999), further supports his position.

### B. Criminal History

Kadunc also challenges the district court's assessment of three criminal history points under U.S.S.G. § 4A1.1(d) and (e). Pursuant to this Guideline, two criminal history points are added "if the defendant committed the *instant offense* while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S. Sentencing Guidelines Manual § 4A1.1(d) (emphasis supplied). One additional criminal history point is added where the defendant also committed the "instant offense" within two years after release from imprisonment. At issue in this case is the meaning of the term "instant offense."

The application note to this provision defines "instant offense" only parenthetically as "any relevant conduct." U.S. Sentencing Guidelines Manual § 4A1.1, cmt. n. 4. Section 1B1.3, in turn, defines "relevant conduct," for purposes of Chapters Two ("Offense Conduct") and Three ("Adjustments"), as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the

commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]" *Id.* § 1B1.3(a)(1)(A). However, in reference to Chapter Four ("Criminal History and Criminal Livelihood"), at issue here, it simply states that "[f]actors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines." *Id.* § 1B1.3(b). In this case, the term "instant offense" is an issue because most of the conduct giving rise to the indictment occurred prior to Kadunc's sentencing on the unrelated state charges, but some occurred after.

Kadunc argued that the definition of "instant offense" in the Sentencing Guidelines was circular and, therefore, vague. As a result, the Court should construe that term narrowly and in his favor to refer only to the counts included in Count Group 1 because, in this case, Count Group 1 was ultimately used to form the basis for the combined adjusted offense level, having resulted in the highest total adjusted offense level (29). Because the conduct that formed the basis for the charges in Count Group 1 all occurred prior to Kadunc's sentencing on the unrelated state charges, he contends that the criminal history points should not have been assessed. The district court determined that assessment of the points was proper "because the conduct that gave rise to the state court sentence occurred months prior to the conduct in the case ..."

### C. Discussion

This court reviews a district court's application of the United States Sentencing Guidelines *de novo* and related factual findings for clear error. *United States v. Jarman,* 144 F.3d 912, 914 (6th Cir.1998).

Regarding the enhancements applied in sentencing Kadunc, neither *United States v. Hayes,* 135 F.3d 435 (6th Cir.1998), and *United States v. Farrow,* 198 F.3d 179 (6th Cir.1999), require this Court to vacate Kadunc's sentence and remand the case to the district court for resentencing, as both cases are distinguishable. In *Hayes,* the same conduct was used as the basis for two enhancements applied to the same count group, which was held impermissible in that case. In *Farrow,* this court held that "the cumulative use of the same conduct to both establish a base offense level and apply an enhancement" was impermissible. In both of these cases, the same conduct was used twice in some manner within the same count group. In the case before the court, however, the defendant argues that the same conduct is used in separate count groups—as the basis for a charge in the indictment in one and as an enhancement in the others.

There is also some question as to whether this Court's decision in *United States v. Beckner,* 983 F.2d 1380 (6th Cir.1993), is applicable. We do not believe that *Beckner* controls this case. In *Beckner,* the defendant pleaded guilty to four counts of mail theft, one count of possession of keys to steal mail, and one count of illegal possession of agricultural coupons. The defendant was also convicted by a jury of two counts of resisting a federal officer in violation of 18 U.S.C. § 111. The defendant's attempted get-away from the post office formed the basis for both (1) the reckless endangerment enhancement of the offense level for mail theft and (2) the charges of resisting arrest. *Id.* at 1383–84. Because the district court in *Beckner* had used "the very same conduct"—the attempted get-away—to form the basis for application of the reckless endangerment enhancement to the mail theft count group, at least one of the resisting arrest counts should have been grouped together with the mail theft

counts under U .S.S.G. § 3D1.2(c). *Beckner,* 983 F.2d at 1383–84.

■ This case presents a different factual situation. Much of Kadunc's reckless endangerment conduct—running a red light at high speed, causing an unidentified driver to lose control of his vehicle—was distinct, both temporally and geographically, from the act that led to the charge of assault on a federal officer. The latter was based on the fact that Kadunc intentionally rammed an FBI agent's car with his own car while the agent was in it. Therefore, the reckless endangerment of an unidentified motorist at the red light is separate and distinct from the vehicular assault on the FBI agent and, thus, may form the basis for both the assault charge and the enhancement.

■ Application Note 5 of § 3D1.2 strengthens this conclusion:

Subsection (c) provides that when conduct that represents a separate court, e.g., bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents "double counting" of offense behavior. Of course, *this rule applies only if the offenses are closely related. It is not,* for example, *the intent of this rule that* (assuming they could be joined together) *a bank robbery on one occasion and an assault resulting in bodily injury on another occasion be grouped together.* The bodily injury (the harm from the assault) would not be a specific offense characteristic to the robbery and would represent a different harm. *On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to war-*

*rant grouping of counts under this subsection....*

U.S. Sentencing Guidelines Manual § 3D1.2 cmt. n. 5 (emphasis supplied). In this case, the reckless endangerment of the civilian motorist at the red light constituted "one occasion" and the subsequent assault on the FBI agent represented "another occasion." The two offenses were not closely related as they occurred in different places at different times. In *Beckner*, on the other hand, the conduct that constituted both reckless endangerment and resisting arrest occurred simultaneously and in the same physical space— "the very same conduct" to be sure, but that is not the situation here. Therefore, the district court did not err in not grouping Kadunc's count for assault on a federal officer with one of his armed bank robbery counts under Sentencing Guidelines § 3D1.2(c).[1]

However, it is immaterial whether *Beckner* requires grouping because the guideline range would have been the same regardless. If the assault count had been included in Count Group 1, the total adjusted offense level for that group would still have been 29[2] and Count Group 1 would still have had the highest offense level of the four Count Groups. There would have been three additional units for the remaining count groups, producing a total of four units. Pursuant to § 3D1.4, if the total number of units is 3 ½ to five, then four levels would have been added to the offense level, resulting in a combined offense level of 33 in this case. Stated

differently, grouping the assault count would have reduced the count groups by one, which would have reduced the number of units from five to four, but this would not have made a difference under § 3D1.4 in calculating the offense level. Because there is no reason to suppose that a different sentence would be imposed upon remand, a remand would be useless.

We also affirm the district court's assessment of three criminal history points. From a hyper-technical standpoint, Kadunc's argument that the definition of "instant offense" in U.S.S.G. § 4A1.1 is circular has some merit. However, the approach advocated by Kadunc is untenable. There is nothing either in the Sentencing Guidelines or existing case law to suggest that "instant offense" refers only to the offense that is ultimately used as the base level offense, to the exclusion of all other offenses of which a defendant is convicted. Further, if the court were to adopt this approach, it might result in a less harsh sentence in Kadunc's particular case, but could have the opposite effect in another defendant's case, depending upon the timing of the imposition of the state sentence and the manner in which particular charges were grouped. This would leave any given defendant's sentence to chance and would lead to inconsistent sentences, both of which are counter to the Guideline's stated goals of honesty in sentencing, reasonable uniformity, and proportionality. U.S. Sentencing Guidelines Manual, Ch. 1, Pt. A, at p. 2 ("The Basic Approach—Policy Statement").

---

1. Although neither party has raised this specific issue, Kadunc has raised an objection that the district court impermissibly double-counted his conduct in the assault offense by applying the reckless endangerment enhancement to the other count groups.

2. The offense level for an entire Count Group is determined by "the highest offense level of

the counts in [that] Group." *U.S. Sentencing Guidelines Manual* § 3D1.3(a). If Count Group 1 consisted of Count 1 (Conspiracy), Count 2 (Armed Bank Robbery), and Count 9 (Assault on Federal Officer), the armed robbery count would still provide the base offense level (20) over the assault count (15).

Therefore, the Court rejects Kadunc's proposed interpretation of the Sentencing Guidelines on this particular point.

We prefer a more common sense interpretation. The Application Notes to § 4A1.1 define instant offense parenthetically as "relevant conduct." Section 1B1.3, in turn, defines "relevant conduct" as follows:

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....

U.S.S.G. § 1B1.3(a)(1)(A). It is not necessary for Chapter Four to provide a new definition when a standard definition is provided elsewhere within the Sentencing Guidelines. Even defining "instant offense" in the narrowest of terms, we would determine that it includes all offenses of conviction.

In this case, Kadunc was sentenced by the state court on August 29, 1997, on two unrelated charges. He was released on March 31, 1998, and was placed on three years probation. The offenses charged in Counts 7 and 9 occurred in October of 1998, while Kadunc was on probation and less than two years after he was released from imprisonment on the unrelated state charges. Further, Count 1 charges a conspiracy that began August 4, 1997, and continued through October of 1998. Therefore, the district court did not err in assessing three criminal history points under § 4A1.1(d) and (e).

### III. Connors' Appeal

■ Connors appeals the district court's denial of the government's motion for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1. Generally, a district court's refusal to exercise its discretion and grant a downward departure is not appealable. *United States v. Brown,* 66 F.3d 124 (6th Cir.1995), *cert. denied,* 516 U.S. 1132, 116 S.Ct. 954, 133 L.Ed.2d 877 (1996); *United States v. Davis,* 919 F.2d 1181 (6th Cir.1990). The only exception is where the trial court was unaware of its discretion to depart, *United States v. Ebolum,* 72 F.3d 35 (6th Cir. 1995), or incorrectly believed that it lacked the authority to grant such a departure as a matter of law. *United States v. Rudolph,* 190 F.3d 720, 722 (6th Cir.1999).

In this case, the government recommended a three-level downward departure for Connors. In denying the motion, the district court stated the following:

> As you know, counsel. I usually give great deference to the United States Attorney's office in this matter. What concerns the Court are two factors. One is the relationship of this defendant to the codefendants. As you know, yesterday a codefendant received 192 months, somewhat different conduct, but much of the conduct overlapped, particularly with respect to Count 1 which involved the conspiracy to rob several institutions.
>
> In addition, I'm concerned with the nature of the conduct in this case, as I am sure the government [is] as well. There are actual victims in this case. There are people who are unable to work in banks as a result of the conduct in this case. I don't take the government's recommendation lightly, but in light of those factors the Court is disinclined at this point to grant the 5K1.1 motion. So for the reasons given, the motion will be denied.

Connors argues that he may appeal his sentence because it was "imposed in violation of law" or "as a result of an incorrect

application of the sentencing guidelines," in reliance on 18 U.S.C. § 3742(A)(1) and (2). Specifically, he argues that because a district court is not permitted to sentence below the Sentencing Guidelines when their proper application results in disparate sentences between codefendants, then a district court cannot refuse to grant a motion for a downward departure on the same basis.

Connors has provided no evidence that the district court believed that it did not have discretion or was unaware of its discretion to depart. To the contrary, the transcript of Connors' sentencing hearing clearly reflects that the district court was aware of its discretion on this issue. Further, the district court is not prohibited from considering the issue of sentencing disparity in ruling on a § 5K1.1 motion. Connors also ignores the other factor considered by the district court: the resulting victims who are no longer able to work in financial institutions because of Connors' conduct. As a result, we conclude that we do not have jurisdiction to review the district court's decision and must dismiss Connors' appeal.

### IV. Conclusion

For the reasons discussed above, we AFFIRM Kadunc's sentence and we DISMISS Connors' appeal.

KAREN NELSON MOORE, Circuit Judge, concurring.

MOORE, Circuit Judge.

I concur. Because the offense level would remain the same regardless of the applicability of *United States v. Beckner,* 983 F.2d 1380 (6th Cir.1993), I would not decide that thorny issue. Otherwise, I concur fully in Judge Wilhoit's opinion.