**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0588n.06
Filed: August 15, 2007

**No. 06-3988**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.

**JOSE ALBERTO REYES-PEREZ,**

    **Defendant-Appellant.**

                            /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

**BEFORE:**     **BOGGS, Chief Judge; CLAY and ROGERS**, Circuit Judges.

    **CLAY, Circuit Judge.** Defendant Jose Alberto Reyes-Perez (a.k.a Javier Armando Reyes-Perez) appeals his sentence for his conviction of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; one count of aiding and abetting mail fraud, in violation of §§ 1341 and 2; one count of mail fraud, in violation of § 1341; one count of possession of fraudulent identification documents, in violation of § 1546(a); and one count of illegal re-entry following deportation, in violation of 8 U.S.C. § 1326. Defendant pled guilty to these charges and was sentenced to sixty months in prison. Defendant now appeals his sentence. For the reasons set forth below, we **AFFIRM** the sentence imposed by the district court.

**BACKGROUND**

Defendant, a citizen of Mexico, was convicted of four counts of burglary, an aggravated felony, on November 3, 1992. He was released to the custody of I.N.S. on December 21, 1995 and was deported from the United States on December 26, 1995. Despite the fact that he did not receive permission from the Secretary of Homeland Security or from the Attorney General to reapply for admission, Defendant reentered the United States again at some point and was convicted of Illegal Reentry and deported on January 18, 1996. The following day, January 19, 1996, Defendant was apprehended attempting to reenter the United States yet again and was subsequently convicted, on March 25, 1996, of illegal reentry following deportation. Defendant was sentenced to twenty-four months in prison. Defendant was deported and removed from the United States again on October 15, 1997.

Beginning on or about January 15, 2005 and continuing until on or about October 7, 2005, Defendant and his co-defendant Sylvia Sobarzo-Reyes devised and executed a scheme to furnish counterfeit identity documents to, or procure such documents, for, other Mexican nationals living illegally in the United States and used the United States Mail to disseminate the counterfeit documents. Those documents included alien registration cards and social security cards that were fraudulently procured in Arizona; Defendant and Sobarzo-Reyes sent orders and payment for those documents from their location in Painesville, Ohio to Arizona, and requested that the completed documents be sent back through the mail to Ohio from Arizona. Knowing that the documents were fraudulent Defendant used the documents to prove authorization for himself to remain in the United States and as evidence of employment within the United States.

On October 6, 2005, Sobarzo-Reyes mailed an express mail package containing the names of six individuals with biographical information and a photograph for each, along with $300.00. The package was sent to an address in Arizona and bore a return address in the name of Javier A.R.P., which was Defendant's alias. On October 7, 2005, Defendant signed for an express mail delivery from Phoenix addressed to Javier A.R.P. The package contained six alien registration cards, corresponding to the pictures and biographies that were mailed out on the previous day, and five social security cards.[1] After accepting the package, Defendant was detained and questioned.

Defendant admitted these facts and pled guilty to the five-count indictment pursuant to a plea agreement with the government. At Defendant's sentencing hearing, the district court calculated that Defendant's Guideline range was fifty-one to sixty-three months. Defendant was represented by counsel, but submitted a *pro se* sentencing memorandum arguing that he was entitled to a lower sentence on several grounds. Defendant's *pro se* memorandum argued that he had accepted responsibility and exhibited rehabilitation, and was thus entitled to a lower sentence. Defendant additionally argued that a difficult childhood and alcohol and drug problems should be considered mitigating factors in determining a sentence. Finally, Defendant argued that as an undocumented person, he is ineligible for the Bureau of Prison's substance abuse program, participation in which would make him eligible for a one-year reduction in his sentence. Because that program was unavailable to him, Defendant argued that he was unnecessarily penalized because of his status as

---

[1] It is unclear from the record whether the inclusion of five social security cards instead of six was by design or by accident. However, the underlying facts of Defendant's offense are uncontested and thus, this confusion does not affect the issues that are before us on this appeal.

an undocumented person and this presented another mitigating factor that should be considered during sentencing.

Defendant argued through counsel that he should receive a sentence on the lower end of the applicable Guidelines range. Interestingly, Defendant's counsel repeatedly referred to a sentencing memorandum that he had prepared, as opposed to Defendant's separate *pro se* memorandum, during the hearing, despite the fact that counsel's memorandum was never submitted to the court. Counsel explained that the memorandum was not submitted due to an oversight on his part, but nonetheless, proceeded with the arguments that were supposedly contained in that memorandum. Counsel pointed out that Defendant had accepted responsibility, which warranted a lower sentence. Additionally, he noted that Defendant had a wife and that his Guidelines range was only as high as it was because Defendant had been convicted of an aggravated felony in 1992, and asked the court to consider the length of time that had elapsed between Defendant's current convictions and that aggravated offense and the effect it would have on Defendant's family in fashioning an appropriate sentence. Finally, counsel made an argument that was difficult to follow because it was explained in detail only in the sentencing memorandum that was never submitted to the court. Defendant argued that some states, notably Arizona and California, have a fast-track program for dealing with immigration cases. Because such a program was unavailable to Defendant, he essentially argued that the result was a disparity in sentences between jurisdictions.

After hearing all of Defendant's mitigation evidence, the court calculated Defendant's offense level. The court grouped Counts 1-4 and found that the base offense level for those counts was eleven, which was enhanced three levels because the possession of fraudulent documents

involved six to twenty-four sets of documents. Two levels were added because the offense was committed after a felony immigration conviction. The result was an offense level of sixteen for Counts 1- 4. The court then considered Count 5, the illegal reentry offense, separately. With respect to Count 5, the court found a base offense level of eight and sixteen levels were added for Defendant's previous conviction and deportation for a violent crime. This resulted in an offense level of twenty-four for Count 5. Pursuant to § 3D1.4, the court performed a multiple count adjustment: Because the adjusted count offense for Count 5 was twenty-four, that yielded a unit of one. The adjusted offense level for Counts 1-4 was sixteen, which yielded a half unit. When a defendant's calculation yields one and one-half units, § 3D1.4 mandates increasing the offense level for the group with the highest offense level by one. The greater adjusted offense level was twenty-four, so it was increased by one level, which yielded a combined offense level of twenty-five, which was reduced by three levels for acceptance of responsibility, which resulted in a total combined offense level of twenty-two. After computing Defendant's Criminal History, the court began consideration of other factors.

The district court considered in detail the § 3553(a) factors following arguments by counsel for Defendant and the government. The court considered Defendant's prior criminal record, his family obligations, his financial situation, and his physical condition. Additionally, the court considered the mitigating factors that had been raised. The court concluded that Defendant's childhood abuse did not seem to impair him now or in any way diminish his capacity. The court considered the effect of Defendant's sentence on his wife, who was also his co-defendant, and noted that Defendant and his wife had no children together. The court even addressed Defendant's

argument about the fast-track program despite it not being well-developed at the hearing, noting that he was familiar with the argument from another case. Ultimately, the court held that there was no equal protection violation arising from the decision of some jurisdictions to use a fast-track program that would be unavailable to Defendant. The court additionally compared Defendant's sentence to the sentence of Sobarzo-Reyes, but noted that she was facing only probation because she was being charged with two fewer counts and had no criminal record.

The court seemed particularly concerned with the fact that Defendant had "continued to defy the law regarding reentry into the United States." (J.A. at 72). The court, while deciding the need for the sentence imposed, noted that Defendant "continues to involve himself into illegal activities once he settles into this country." (J.A. at 72). Further, he noted that he was concerned that Defendant did not reveal his source for procuring fraudulent documents. The court noted that

> He appears to be in the regular business of procuring IDs for other illegal aliens. That weighs heavily on this court because he is perpetuating additional criminal activity and this specifically hurts those immigrants who have legally applied for entry into the United States and are abiding by our laws. It hurts them as much as the rest of us.

(J.A. at 72-73). Based on these considerations, the court sentenced Defendant to sixty months of imprisonment and three years of supervised release on each conviction, to be served concurrently. Defendant timely filed a notice of appeal.

**DISCUSSION**

**I.      Defendant's Base Offense Level**

      **A.      Standard of Review**

6

"Guideline interpretation is a question of law to be reviewed by this Court de novo." *United States v. Beckner*, 983 F.2d 1380, 1383 (6th Cir. 1993).

**B.     Analysis**

According to § 3D1.2(c),

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: . . .

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

§ 3D1.2(c). Thus, there are two options embedded in subsection C that a defendant may proceed under: if the conduct that gives rise to one offense can either be treated as a specific offense characteristic in, or is used to adjust the applicable Guideline of a second offense, those offenses must be grouped. Defendant argues that the court erred in failing to group his illegal reentry conviction (Count 5) with Counts 1-4. Defendant claims that Count 5 involved substantially the same harm as the first four Counts, and thus, that § 3D1.2(c) requires they be grouped together.

Notably, we have held that "[w]here distinct societal interests are infringed by conduct in different counts they should not be grouped together, even if they are generally considered part of a common plan or scheme." *United States v. Sims-Robertson*, 1994 U.S. App. LEXIS 1146 (6th Cir. 1994) (citing *United States v. Egson*, 897 F.2d 353 (8th Cir. 1990)). Thus, we require more than merely a finding that the harms arise out of the same plan or scheme. In *Beckner*, we shed some light on what is considered "substantially the same harm." 983 F.2d at 1383. In that case, the defendant was convicted of two mail fraud counts and two charges of resisting arrest. *Id*. The district court did not group the counts involving resisting arrest with the mail fraud counts. *Id*. We held that the

district court erred in failing to group these counts. In that case, we reasoned that the defendant's mail fraud base offense level had been enhanced by two levels because of "reckless endangerment during flight," which was formed by the same conduct as her attempt to escape arrest. *Id.* Because that was the same conduct that formed the basis of the resisting arrest count, we determined that the counts should have been grouped pursuant to § 3D1.2(c). *Id.* The Guideline for the mail fraud conviction was adjusted because of the conduct that gave rise to the resisting arrest conviction, which clearly falls within § 3D1.2(c) *Id.* "The very same conduct, defendant's driving of the car in her futile attempt to escape arrest . . . is also embodied in defendant's resisting arrest counts" and "[a]s a result, section 3D1.2(c) applies." *Id*. at 1383-84. Simply put, "using conduct from one group of counts to adjust the offense level of another group of counts without thereafter grouping all the counts together is inconsistent" with § 3D1.2(c). *United States v. Ross*, 279 F.3d 600, 605 (8th Cir. 2002).

Defendant argues that Counts 1-4 were enhanced because of Count 5, and thus, that this case is indistinguishable from *Beckner*. Defendant's PSR clearly states that, with respect to Counts 1-4, "because the Defendant committed the instant offense after sustaining a conviction for a felony immigration and naturalization offense, the offense level is increased by two (2) levels, pursuant to § 2L2.1(b)(4)(A)." (J.A. at 86). Count 5, however, is based on the offense of illegal reentry following deportation on or about October 7, 2005. Importantly, Defendant had been convicted of Illegal Reentry two times prior to the occasion that formed the basis for Count 5. Defendant fails to address the fact that either of these earlier convictions could have formed the basis for this enhancement. Further, the PSR explicitly states that the enhancement is being imposed because

Defendant committed the instant offenses (Counts 1-4) after being *convicted* of a felony immigration and naturalization offense. When Defendant committed the conduct that gave rise to Counts 1-4 he had not been convicted of Count 5 yet. Thus, the only logical conclusion is that Defendant's two-level enhancement was imposed because of his previous convictions of Illegal Reentry. The conduct that gave rise to the enhancement was not the same conduct that gave rise to Count 5, and accordingly, the district court did not err in failing to group Counts 1-4 with Count 5 for the purpose of determining Defendant's base offense level. *Beckner*, 983 F.2d at 1383-84.

## II.     Ineffective Assistance of Counsel

### A.     Standard of Review

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 667, 688 (1984). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### B.     Analysis

In the instant case, Defendant's only argument that he received ineffective assistance of counsel is that counsel failed to articulate the legal basis for Defendant's challenge to the multiple count adjustment. Thus, because we find Defendant's claim that his sentence was calculated

improperly to be unpersuasive, Defendant likewise cannot succeed on his ineffective assistance of counsel claim.[2]

## III.    Procedural Reasonableness of Defendant's Sentence

### A.    Standard of Review

"After *[United States v.]Booker* [543 U.S. 220 (2005)], which rendered the Sentencing Guidelines advisory for all criminal cases, district courts have enhanced discretion in the sentencing of criminal defendants.  Ultimately, however, *Booker* requires that the sentence imposed by the district court be reasonable." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) (citing *Booker*, 543 U.S. at 260).

### B.    Analysis

Defendant argues that his sentence is procedurally unreasonable because the court failed to adequately consider Defendant's mitigating evidence presented in his sentencing memorandum. This is an argument involving procedural reasonableness.  In determining procedural reasonableness, we review "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Id*.  Specifically, we must ask whether the district court "fail[ed] to 'consider' the applicable Guidelines range or neglect[ed] to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply select[ed] what the judge deem[ed] an appropriate sentence

---

[2]It is unclear why Defendant limits his ineffective assistance of counsel claim to the failure to object to the offense level calculation when a stronger argument could likely be made that counsel was ineffective for his failure to file a sentencing memorandum due entirely to his own neglect. However, we may not expand Defendant's ineffective assistance of counsel claim to make an argument that he does not broach, and thus, we may not consider this argument. *Marks v. Newcourt Credit Group, Inc*., 342 F.3d 444, 462 (6th Cir. 2003).

without such required consideration." *Id.* (footnote omitted). A district court is not duty-bound to recite each § 3553 factor and analyze it in order for this Court to conclude that the sentence is procedurally reasonable. The court must, however, "provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006).

In the instant case, Defendant argues that the district court did not give an adequate basis for rejecting his mitigation arguments. However, the record tells a different story. The court considered Defendant's prior criminal record, his family obligations, his financial situation, and his physical condition. He considered all of Defendant's offered mitigating factors, including a discussion of the fast-track program argument that required the court to entertain an argument that had not been detailed before the court. He additionally noted that Defendant had accepted responsibility for his crimes, and was granted a three-level reduction for doing so. The court compared Defendant's sentence with that of his co-defendant, and considered his age and likelihood of recidivism. The court explained on the record that the mitigation arguments were ultimately unpersuasive and voiced a concern that Defendant had continued to commit crimes each time he re-entered the United States and indicated the belief that Defendant's refusal to give the name of the person who furnished him with illegal documents implied that he was not finished working with the individual. As we have held "[w]hen a district court adequately explains why it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse–why an alternative sentence was not selected–in every instance." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) (emphasis omitted). The record supports a finding of procedural

reasonableness and, thus, Defendant's argument does little more than to invite this Court to reconsider the mitigating factors that Defendant offered and impose a lower sentence. We may not accept such an invitation, as it is not our role on a review of procedural reasonableness to substitute our judgment for that of the district court when a sentence is reasonably imposed. *United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005). Thus, we find that Defendant's sentence is procedurally reasonable.

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the sentencing order of the district court.