**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0507n.06

**No. 12-3847**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*May 22, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO**

SHANE MATTHEW ROUSH,

     **Defendant-Appellant.**

                                      /

BEFORE:    CLAY and COOK, Circuit Judges; and OLIVER, District Judge.[*]

    **CLAY, Circuit Judge.** After pleading guilty to cultivation of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vii), Defendant Shane Roush was sentenced to a term of 281 months' imprisonment to be followed by five years of supervised release. Defendant appeals his sentence, claiming that the district court committed procedural error in imposing it. For the following reasons, we **AFFIRM** Defendant's sentence.

**BACKGROUND**

    Defendant Shane Roush had an ongoing dispute with his neighbor Jeff Levering over the easement rights between their properties in rural Morrow County, Ohio. On October 21, 2010, Morrow County Sheriff's Sergeant Robert Chalfant and Detective Brandon Moore responded to a

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

call from Levering complaining that Defendant's van was blocking Levering's access to his fields. Upon arrival, Moore spoke with Defendant, who agreed to move his van; Chalfant then departed.

Moore stayed behind because Levering informed Moore that Defendant was growing marijuana on Defendant's property—something Defendant had been doing since 2005. To investigate Levering's claim, Moore climbed on top of one of Levering's grain bins to get a better view of Defendant's fields. At that time, Moore observed what he believed to be marijuana growing in Defendant's fields. Moore then returned to his vehicle and drove along the fence line to get a better view of the marijuana. Defendant's wife observed Moore on the grain bin and driving the fence line and told her husband. Defendant directed his wife to retrieve his Sig Sauer semiautomatic assault rifle and ballistic vest.

Defendant exited his house, put on his ballistic vest, and walked toward Moore while carrying the assault rifle. Defendant then opened fire on Moore, hitting him four times. Defendant then turned his fire on the Levering family: Levering, his wife, and his son. The Leverings took cover behind their truck as Moore returned fire, wounding. A later investigation yielded over 1,750 marijuana plants and over 100 firearms from Defendant's property.

The State of Ohio indicted Defendant and charged him with attempted aggravated murder and multiple felonious assault counts, as well as marijuana cultivation and trafficking counts. In December 2010, a federal grand jury in the Southern District of Ohio indicted Defendant for cultivation of more than 1000 marijuana plants, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vii), and discharging a firearm during a drug-trafficking crime, in violation of 18 U.S.C.

§ 924(c)(1)(A)(i)–(iii). The federal indictment also included a forfeiture count. Due to the overlapping drug charges, the state dismissed its cultivation and trafficking charges.

On August 22, 2011, Defendant pleaded guilty to the remaining state charges for which he received a total of 25 years' imprisonment. Thereafter, Defendant was brought into federal court pursuant to a writ of habeas corpus ad prosequendum. Defendant pleaded guilty to the cultivation charge (and the forfeiture), in exchange for a dismissal of the firearms charge and a recommendation that the state and federal sentences run concurrently.

The pre-sentence report ("PSR") calculated Defendant's Guidelines range with a base offense level of 26 for the 1,750 marijuana plants. *See* U.S.S.G. § 2D1.1(c)(7). Two points were added for possession of a dangerous weapon. *See id.* § 2D1.1(b)(1). Six points were added due to Defendant's creation of a substantial risk of serious bodily injury to a law enforcement officer (i.e., the official-victim enhancement). *See id.* § 3A1.2(c)(1). The four-level body-armor enhancement was applied. *See id.* § 3B1.5(1)–(2). Finally, the PSR added two points for reckless endangerment during flight. *See id.* § 3C1.2. After subtracting three points for acceptance of responsibility, *see id.* § 3E1.1(a)–(b), the PSR calculated Defendant's offense level as 37. Coupled with his criminal history category of I, this resulted in a Guidelines range of 210–262 months' imprisonment. *See id.* ch. 5, pt. A. The probation officer, who prepared the PSR, also recommended an upward departure, under U.S.S.G. § 5K2.2, to 300 months. The district court followed the PSR's recommended departure, and following a 19-month reduction for time served on the state charge, Defendant was sentenced to 281 months in prison to be followed by five years of supervised release.

**STANDARD OF REVIEW**

We review sentences "for reasonableness under an abuse of discretion standard." *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009). In our review, "[t]he district court's interpretation of the advisory Guidelines is reviewed *de novo*, and its findings of fact are reviewed for clear error." *Id*. The district court commits procedural error by "'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

**DISCUSSION**

Defendant raises two arguments on appeal. First, he argues that the district court erred in applying the two-point reckless endangerment enhancement under U.S.S.G. § 3C1.2 to his sentence. Second, he contends that the district court committed error by applying both the official victim enhancement under U.S.S.G. § 3A1.2 and departing upward under U.S.S.G. § 5K2.2.

**A.      Reckless Endangerment under U.S.S.G. § 3C1.2**

Section 3C1.2 of the Guidelines provides a two-point enhancement to a defendant's offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The application of this provision is broader, however, than the text might suggest. The Application Notes to U.S.S.G. § 3C1.2 note this breadth and also specify that the enhancement applies to conduct that "includes preparation for flight" as well as "conduct [that] occurs in the course of resisting arrest." U.S.S.G.

§ 3C1.2 app. n. 3. "Although what constitutes reckless endangerment during flight is a mixed question of law and fact, it is highly fact-based and significant deference to the district court is required." *United States v. Tasaki*, No. 12-5411, 2013 WL 69356, at *1 (6th Cir. Jan. 7, 2013); *see also United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005). In this case, although the district court found that Defendant was not literally fleeing because the PSR noted that Defendant walked *towards* Moore before he opened fire, the district court did find that the enhancement was applicable because Defendant's shooting of Moore and at the Leverings was done in the course of resisting arrest.

Before turning to the question of whether Defendant's conduct fits into the § 3C1.2 enhancement, we must first determine which aspect of Defendant's conduct is being punished by the application of this enhancement. This threshold determination is necessary because our caselaw prohibits double counting, which "occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). In addition to the § 3C1.2 enhancement, the district court applied the six-point official-victim enhancement under U.S.S.G. § 3A1.2 to Defendant's sentence. This enhancement applies where a defendant assaults a law enforcement officer "in a manner creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(c)(1). While it is clear that the shooting of Officer Moore would fall within the ambit of § 3C1.2, the shooting of Moore also supports the district court's application of § 3A1.2. Therefore, in order to validly apply both §§ 3A1.2 and 3C1.2 and avoid a double-counting problem, there must be another aspect of Defendant's conduct, distinct from the shooting at Moore, to support the additional application of the § 3C1.2 enhancement. The only

conduct that can support the application of the § 3C1.2 enhancement is Defendant's shooting at the Leverings because the application of the official-victim enhancement covers Defendant's shooting of Officer Moore.

As to the applicability of § 3C1.2 to Defendant's shooting at the Leverings, we first agree with the district court (and Defendant) that this conduct was not done "during flight" because fleeing, as commonly understood, requires that a person "run away . . . from trouble or danger," The American Heritage Dictionary of the English Language 672 (4th ed. 2000), and the PSR indicated that Defendant walked *towards* the Leverings when he was shooting. But, as noted above, the enhancement is broader than just reckless endangerment during flight; it includes reckless endangerment "in the course of resisting arrest." U.S.S.G. § 3C1.2 app. n. 3. We conclude that Defendant's shooting of the Leverings was done in the course of resisting arrest.

Defendant knew that by growing marijuana he was engaged in the commission of a crime under both state and federal law. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii); Ohio Rev. Code § 2925.04(A); *see also* Ohio Rev. Code § 2925.11(A). He also knew that because Officer Moore had viewed the marijuana growing in his fields, Moore had probable cause to arrest him on the spot. *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, . . . [t]he arrest is constitutionally reasonable."). Therefore, when Defendant exited his house with his assault rifle and ballistics vest and opened fire, the only plausible explanation for his conduct is that he was attempting to prevent Moore from arresting him (i.e., resisting Moore's imminent arrest). It was in the course of resisting the arrest from Moore that Defendant shot at the Leverings. *Cf. United States v. Swoape*, 31 F.3d

482, 483 (7th Cir. 1994) (citing *United States v. Mills*, 1 F.3d 414 (6th Cir. 1993)) (finding § 3C1.2's enhancement applicable where the defendant endangered civilians by engaging in a parking lot shootout with police in the presence of bystanders after robbing a bank). Finally, this is not a case of a continuous course of conduct like in *United States v. Hayes*, 135 F.3d 435 (6th Cir. 1998), where we reversed the application of enhancements under both § 3A1.2 and § 3C1.2 to a defendant who injured a police officer as well as a child by "rapid[ly] accelerati[ng his] car in the direction of other occupied vehicles." *Id.* at 438. In this case, the PSR reveals that Defendant turned his body in order to fire at the Leverings, demonstrating that although the conduct represented a single course of resisting arrest from Moore, the shooting at the Leverings was a separate and distinct act.

**B.     Upward Departure under § 5K2.2**

The Supreme Court has held that "it is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range." *Williams v. United States*, 503 U.S. 193, 200 (1992). Defendant contends that the basis for the district court's departure under U.S.S.G. § 5K2.2 was the same as the basis for applying the official victim enhancement under U.S.S.G. § 3A1.2. This issue requires us to compare § 3A1.2 and § 5K2.2 to determine if § 5K2.2's conduct was already "fully considered" by § 3A1.2.

The official-victim enhancement under § 3A1.2 applies "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assault[s] such officer during the course of the offense." U.S.S.G. § 3A1.2(c)(1). By contrast, § 5K2.2 provides:

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. . . .

In this case, the district court had before it evidence about the permanent groin and leg injuries inflicted on Moore by Defendant. Both of these injuries will require lifelong treatment.[1] The district court departed upward because of the "significant" and "severe" nature of the injuries sustained by Moore.

The comparison of the two Guidelines provisions demonstrates that they punish different aspects of Defendant's conduct. By its terms, § 3A1.2 can apply regardless of whether an officer sustains serious injuries. In this case, the district court departed upwards under § 5K2.2 based on the severity of the actual injuries suffered by Moore. Therefore, because § 3A1.2 is focused on the *risk* of bodily injury while § 5K2.2 is focused on the *extent* of the *actual* injury, there was no impermissible double counting in the district court's § 5K2.2 departure in addition to its application of the § 3A1.2 enhancement. *See United States v. Levy*, 250 F.3d 1015, 1018–19 (6th Cir. 2001) (upholding the application of § 2J1.2(b)(1) due to a physical injury as well as an upward departure under § 5K2.2 due to the extent of the injury).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's sentence.

---

[1]After countless surgeries, Moore's leg injuries still cause him to walk with a limp, likely for the rest of his life. Additionally, treatment of Moore's groin injury will require lifelong hormone therapy.