NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0047n.06

No. 22-6095

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 31, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES ALLEN BOWERS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant James Allen Bowers appeals his conviction and sentence for one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He argues that § 922(g)(1) violates the Second Amendment under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and that the district court improperly applied two guideline enhancements—the first based on a finding that he possessed a stolen gun, and the second based on a finding that he separately endangered both law enforcement and the public during the pursuit leading to his arrest. We AFFIRM.

**I.**

Among the invited guests at Virginia Robinson's 2020 Thanksgiving dinner were Defendant James Allen Bowers and his father, James Allen Bowers, Sr.[1] Robinson had provided caretaking services for Bowers, Sr., who is elderly, and for Bowers, who has physical disabilities.

---

[1] For clarity, this opinion will refer to the Defendant as "Bowers" and his father as "Bowers, Sr."

Bowers and his father live in separate homes on either the same or adjoining properties; they drove to Robinson's house together, in Bowers, Sr.'s white Chevy Tahoe. Although the SUV belongs to his father, Bowers frequently drove it. Bowers, Sr. regularly carries a gun, and did so that day. At some point during the day, Bowers, Sr.'s holster became uncomfortable. So, he took the gun out of the holster, unloaded it, put the shells in his pocket, and set the gun down next to the driver's seat or underneath it.

While at Robinson's house, Bowers got into an argument with another guest. According to Robinson's son-in-law, Coty Bivens, Bowers appeared intoxicated and was belligerent. As the argument escalated into "yelling, screaming, [and] cussing," Bivens and others told Bowers to leave. R.75, PID 753. Bowers refused, saying he had a right to be there and "would fight . . . to stay if he needed to." *Id.*, PID 754. Bivens tried escorting Bowers out of the house. As he did, Bowers continued to protest and said "[t]hat once he did leave, he was going to go to his house, retrieve a gun, come back, and shoot everyone and burn the house down." *Id.*, PID 754–55. Bowers and his father eventually drove home, with Bowers, Sr. driving.

About twenty minutes after Bowers left, Robinson took a FaceTime video call from Bowers. Robinson's daughter, Lacy Bivens, heard the call audio but did not see the video. Bivens testified that she heard gunshots through the phone and then heard Bowers say, without the following censoring, "[y]ou done F'd up, Virginia. I'm going to come over and kill you MFers and lay that place on bricks." *Id.*, PID 766.

Bivens panicked and began ushering the children present at the dinner to her car, so she could take them to a relative's house nearby. Because there were ten to fifteen children, Bivens had to take multiple trips. At 8:10 p.m., during her first trip, she called 911 from the car.

2

About three minutes later, Bowers, Sr.'s neighbor, Janet McCarty, also called 911. She told dispatchers she heard gunshots, angry "hollering," and "cussing." *Id.*, PID 806.

Meigs County Sheriff's Deputy Brandon Crowe was dispatched to respond to the 911 calls, and drove to Bowers, Sr.'s house. As he arrived, he saw a white Chevy SUV pull out of the driveway "at a high rate of speed." *Id.*, PID 813. Crowe pursued the SUV and saw it run two stop signs and, at one point, drive into an oncoming lane of traffic. It then pulled into the parking lot of a church cemetery and stopped. Crowe, who could now see that Bowers was driving, got out of his vehicle with his patrol rifle and told Bowers to exit the SUV. Bowers did not comply and drove away again, in the direction he had come. The stop in the parking lot lasted about one minute.

When the pursuit resumed, Bowers continued driving "recklessly." *Id.*, PID 816. As Bowers pulled out of the parking lot, another deputy, Van Christian, drove toward him from the opposite direction. Bowers crossed into the oncoming lane and drove directly at Christian, who had to swerve off the road and into a ditch to avoid a collision. Crowe continued to pursue Bowers until Bowers tried to take a sharp turn at high speed, went off the road into the woods, and wrecked the SUV. Bowers attempted to flee on foot, but was subdued and arrested by Crowe and Christian. Crowe found a loaded black Kel-Tec handgun belonging to Bowers, Sr. in the SUV, on the driver's side floorboard.

In total, the pursuit lasted approximately six minutes and covered seven miles. Crowe testified that the area in which it occurred is rural and residential, with curving roads. Although the speed limit was around forty-five miles per hour, he reached speeds of up to eighty miles per hour chasing Bowers. Crowe testified that there were other vehicles on the road and nearby during the pursuit.

Bowers, who had prior felony convictions, was charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and found guilty after a two-day jury trial. On November 30, 2022, the district court sentenced Bowers to 110 months' imprisonment and 3 years of supervised release.

## II.

After Bowers's conviction, but before his sentencing hearing, the United States Supreme Court issued its opinion in *Bruen*, announcing a new framework for evaluating Second Amendment challenges to firearms restrictions. *See* 597 U.S. at 24.[2] Bowers argues for the first time on appeal that § 922(g)(1) "is unconstitutional both facially and as applied," and that "his conviction should be vacated." Appellant Suppl. Br. at 2.[3]

Because Bowers did not raise this argument before the district court, it is subject to plain-error review. *United States v. Trammel*, 404 F.3d 397, 401 (6th Cir. 2005); *see* Fed. R. Crim. P. 52(b). To constitute plain error, a "legal error must be clear or obvious, rather than subject to reasonable dispute." *United States v. Kennedy*, 65 F.4th 314, 325 (6th Cir. 2023) (quoting *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015)). This requires, "at a minimum," that the error be "clear under current law," meaning a finding of clear error is precluded by "[a] lack of binding case law" or a circuit split on the issue. *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir.

---

[2] Under *Bruen*, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

[3] Bowers also did not raise this argument in his opening appellate brief and instead requested leave to file a supplemental brief addressing *Bruen* approximately one month after filing his reply brief. Although Appellants typically forfeit arguments not raised in their opening briefs, *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019), we can review forfeited arguments in exceptional circumstances, *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999).

2015) (internal quotation omitted). An error can become plain at the time of appellate review. *United States v. Woodruff*, 735 F.3d 445, 450 (6th Cir. 2013).

No binding case law addresses the constitutionality of § 922(g)(1) in light of *Bruen*, thus precluding a finding of plain error. Neither the Supreme Court nor the Sixth Circuit has yet to address the issue. And in *Bruen*, which concerned a New York open-carry licensing statute, five current Justices joined opinions indicating that "longstanding prohibitions on the possession of firearms by felons" remain "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008); *see Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . . Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80–81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (stating that the decisions in *Bruen*, *Heller*, and *McDonald* do not "cast doubt on longstanding prohibitions on the possession of firearms by felons" (quoting *Heller*, 554 U.S. at 626–27)); *id.* at 129 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.) ("Like Justice [Kavanaugh], I understand the Court's opinion today to cast no doubt on" *Heller*'s statement that prohibitions on felon gun possession are presumptively lawful). Additionally, the circuit courts that have addressed § 922(g)(1)'s constitutionality have come to different conclusions. *See United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("Congress acted within the historical tradition when it enacted § 922(g)(1) . . . . [W]e conclude that the statute is constitutional as applied."); *Range v. Att'y Gen.*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (holding § 922(g)(1) unconstitutional as applied to a defendant whose predicate offense was a nonviolent misdemeanor). Because it is not "clear or obvious" that § 922(g)(1) is unconstitutional in light of

*Bruen*, Bowers has not shown that his conviction constituted plain error. *See Kennedy*, 65 F.4th at 325.

**III.**

Bowers also challenges the district court's application of two sentencing enhancements. "The court's legal interpretation of the Guidelines [is] reviewed de novo, but its factual findings are reviewed under the clearly-erroneous standard." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). "A district court's application of the facts to the Sentencing Guidelines is a mixed question of law and fact that we review de novo." *United States v. Baker*, 501 F.3d 627, 629 (6th Cir. 2007) (quoting *United States v. Middleton*, 246 F.3d 825, 844 (6th Cir. 2001)). The government has the burden "to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).

**A.**

Bowers first challenges the application of a two-level enhancement under Section 2K2.1(b)(4)(A) of the Sentencing Guidelines, based on a finding that the gun found in Bowers's possession was "stolen." U.S.S.G. § 2K2.1(b)(4)(A). The Guidelines do not define "stolen," but this court held in *United States v. Jackson* that the enhancement is correctly applied to a firearm "intentionally taken without its owner's permission." 401 F.3d 747, 748, 750 (6th Cir. 2005). The *Jackson* court also clarified that the defendant need not intend to "permanently deprive" the owner of their firearm to steal it, and approvingly cited the Oxford English Dictionary's "definition of 'steal,' as '[t]o take dishonestly or secretly.'" *Id.* at 750; *see United States v. Chambers*, 638 F. App'x 437, 445 (6th Cir. 2015) (quoting *Jackson* and defining "stolen" as "[t]o take dishonestly or secretly"); *United States v. Thornton*, 621 F. App'x 324, 330 (6th Cir. 2015) (same).

Bowers argues the district court erred because the evidence did not establish that he took his father's gun "dishonestly or secretly." *Jackson*, 401 F.3d at 750. In making this argument, Bowers maintains that he did not intentionally take his father's gun, and that it happened to be in the SUV he drove away from police "only by unfortunate circumstance." Appellant Br. at 12. When he raised this objection at his sentencing hearing, the district court challenged him to square that theory with the guilty verdict, which required the jury to find that Bowers "knowingly possess[ed] a firearm." R.35, PID 346. Bowers argued that the jury could have convicted him under a theory of constructive possession.

Because there was evidence that Bowers did intentionally take the gun, and did not simply drive off unaware that it was under his seat, he has not established that the district court erred in applying the Section 2K2.1(b)(4)(A) enhancement. The gun was not recovered from the SUV in the same condition Bowers, Sr. left it—Bowers, Sr. testified that he left the gun in the SUV unloaded, and Crowe testified that he found ammunition in it when he arrested Bowers. Further, there was evidence that Bowers was the one to load it—Lacy Bivens testified that she heard gunshots through the phone when Bowers called her mother, and Bowers had previously communicated his intent to return to Robinson's house with a weapon.[4] The district court therefore did not err in rejecting Bowers's argument that there was no evidence he knowingly possessed a stolen gun.

---

[4] Bowers is incorrect that the jury's acceptance of a constructive possession theory would make his contention that he was unaware that the gun was in the car consistent with the verdict. A defendant has actual possession of a weapon "within [his or her] immediate power or control." *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013). Constructive possession, in contrast, requires only that "the defendant 'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id.* (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)). But constructive possession requires showing that the defendant "*had knowledge of*," in addition to access to, the weapon. *United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2009) (emphasis added); s*ee also* Sixth Circuit Pattern Criminal Jury Instruction 2.10(3) (instructing that constructive possession requires "the right to exercise physical control," knowledge of this right, and intent to exercise physical control "at some time").

**B.**

Bowers next contends that the district court engaged in "impermissible double-counting," by applying two enhancements based on his dangerous conduct during the police pursuit leading to his arrest. Appellant Br. at 13 (quoting *United States v. Fugate*, 964 F.3d 580, 584 (6th Cir. 2020)) (internal quotation omitted). The district court applied a six-level enhancement under Section 3A1.2(c)(1) of the Guidelines based on Bowers running Christian off the road. That enhancement applies if a defendant assaults a person they know or reasonably believe to be a law enforcement officer "in a manner creating a substantial risk of serious bodily injury . . . during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1). The district court then applied a further two-level enhancement for "creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," based on Bowers's reckless driving during the pursuit. U.S.S.G. § 3C1.2. Bowers does not object to the six-level enhancement, instead arguing that the Section 3C1.2 enhancement impermissibly penalizes the same conduct.

Because the two enhancements address distinct actions taken by Bowers during the pursuit, the district court did not err by applying both. "[I]mpermissible 'double-counting'" under the Guidelines "occurs when two enhancements punish 'precisely the same aspect of the defendant's conduct.'" *Fugate*, 964 F.3d at 584 (quoting *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015)); *see also* U.S.S.G. § 3C1.2 cmt. n.1 ("Do not apply this enhancement where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct."). "But no double counting occurs if the defendant is punished for distinct aspects of his conduct." *Battaglia*, 624 F.3d at 351.

The application of both the 3A1.2 and 3C1.2 enhancements constitutes impermissible double-counting when there is "no sensible way to distinguish the conduct that formed the basis for the two enhancements." *United States v. Hayes*, 135 F.3d 435, 438 (6th Cir. 1998). In *Hayes*, a defendant who had a child with him drove his car at a DEA agent and rammed into two police vehicles. 135 F.3d at 438. The district court engaged in double-counting by applying the Section 3A1.2 enhancement for injuring the agent and the Section 3C1.2 for endangering the child. *Id.* at 437–38. Although there were two victims, they were both harmed by the same conduct—the "single, uninterrupted act" of "rapid acceleration of defendant's car in the direction of other occupied vehicles." *Id.* at 438.

But here, unlike in *Hayes*, the conduct underlying each enhancement is distinct. As the government argued, Bowers's reckless driving—reaching high speeds on winding roads at night, crossing into the oncoming lane, and driving through stop signs—during the portion of the chase from his house to the cemetery parking lot, endangered the public. He then paused for a minute in the parking lot, interrupting this conduct. When Bowers resumed the chase, he took a separate action to assault Christian by running him off the road. Although the acts occurred during the same pursuit, the district court did not err in concluding that "two discrete sets" of actions form the basis for the two enhancements. R.76, PID 932; *see United States v. Roush*, 527 F. App'x 349, 353 (6th Cir. 2013) (finding two "separate and distinct act[s]" where defendant fired at officer, then "turned his body" and fired at his neighbors); *United States v. Kadunc*, 5 F. App'x 419, 424 (6th Cir. 2001) (affirming application of both enhancements where defendant, in "temporally and geographically" distinct acts, endangered the public by running a red light and assaulted an officer by ramming an FBI agent's car). We find no error in the application of the additional two-level enhancement under Section 3C1.2.

**IV.**

For these reasons, we AFFIRM.